(No. 51321.-

VERITONE COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Mildred Myslewiec, Appellee).

*Opinion filed May 22, 1980.*

Murges & Bowman, of Chicago (George J. Murges and Gerald M. Chapman, of counsel), for appellant.

Gerald B. Saltzberg, of Fishman & Fishman & Saltzberg, P.C., of Chicago (Sidney Z. Karasik, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The claimant, Mildred Myslewiec, was injured when she fell from a chair on which she was standing while stacking boxes on May 17, 1973. At a hearing before an arbitrator, the respondent, Veritone Company, stipulated that the injuries arose out of and in the course of the claimant's employment but disputed the nature and extent of the claimant's disability. The arbitrator found that as a result of the claimant's condition, which was diagnosed by one medical witness as "agitated depression," the claimant suffers from a total and permanent disability. The arbitrator awarded the claimant compensation of $75 per week for a period of 304 weeks and $48 for one week, and thereafter an annual pension for life of $2,760, pursuant to section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(f)). The claimant was also awarded $11,818 for medical and hospital services under section 8(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)). The Industrial Commission affirmed the decision of the arbitrator. On a writ of *certiorari,* the circuit court of Cook County confirmed the order of the Commission. The respondent appeals pursuant to Rule 302(a). 73 Ill. 2d R. 302(a).

On May 17, 1973, the claimant was employed by respondent as an inspector and packer. She was stacking boxes to a level about nine feet high while standing upon a chair when she lost her balance and fell backwards.

According to the claimant's testimony during a bedside arbitration hearing, as she fell she "twisted" her back and neck. While still unconscious, the claimant was carried to a car and driven to a clinic. Upon regaining consciousness, she received an injection for the pain she was suffering, and medication was prescribed for her. The claimant was then taken home and put to bed. For the next week the claimant traveled to the clinic daily for heat treatments and injections to ease the pain. The claimant testified that as the week progressed the pain worsened each day to the point where she felt she was unable to walk. She was taken to the Elmhurst hospital where she remained in traction for three weeks. After being released from the hospital, the claimant returned home. The pain had not abated, however, so the next day she returned to the hospital, where she stayed another three weeks. Upon returning home again, claimant was confined to a hospital bed which had been ordered by the physician treating her, Dr. Newman. From July 6, 1973, the day the claimant returned home, to August 31, 1973, Dr. Newman called upon the claimant in her home approximately once every other week. Throughout that time, the claimant testified, she was confined to bed except for unsuccessful attempts to use a walker. On September 12, 1973, Dr. Newman ordered the claimant to return to the Elmhurst hospital a third time. The claimant was again placed in traction. In addition, a laminectomy and disc excision were performed on September 21, 1973, to correct a herniated L-4 intervertebral disc. The claimant was released from the hospital on October 28, 1973.

From October 1973 to the arbitration hearing conducted in October and December 1975, the claimant continually received treatment, including traction and the use of a corset, while intermittently spending time in the hospital undergoing other treatment. Additional testimony taken of the claimant revealed that she has a long and

varied history of illnesses and injuries. For purposes of this appeal, the most significant prior injury was an undescribed injury the claimant received to her left leg while employed elsewhere than for respondent. The injury occurred on September 24, 1970. On December 22, 1972, a settlement of $5,040 for the claim pertaining to that injury was approved by the Industrial Commission.

Medical testimony of three physicians was adduced at a subsequent, continued hearing before the arbitrator. Dr. Marshall Falk, a psychiatrist called by the claimant, testified that he examined the claimant in her home for approximately 45 minutes. His diagnosis of the claimant's illness was an "agitated depression," a psychological illness which, in his opinion, was directly related to the incident in 1973. Dr. Falk stated he thought the claimant's condition to be permanent and, since the emotional aspect of the claimant's illness had been untreated for nearly three years, it would be difficult to predict any significant improvement regardless of the treatment.

On cross-examination, counsel for the respondent asked Dr. Falk whether it would have made any difference in the doctor's diagnosis that the claimant had suffered an injury in 1970 for which she collected $5,000. The doctor replied, "It might have." Later, the doctor was asked by respondent's counsel, with regard to whether the claimant might have been malingering:

"Q. The fact that she failed to mention to you, Doctor, recovery of a large sum of money in 1970, for an injury to her back and leg, wouldn't that put some element of doubt in your mind, Doctor?
A. No."

Subsequently, on redirect examination, Dr. Falk had the following exchange with counsel for the claimant:

"Q. You indicated that were you aware of this disability of 40 per cent of a leg and her compensation of five thousand and some odd dollars in 1969 or 1970, that might have made a difference in your diagnosis, is that

right—

A. I indicated that would make a difference?

Q. That might have made a difference in your diagnosis?

A. Possibly.

Q. In what way?

A. Well, if there was more of an extensive injury at that time and there was some credibility problem that I was having it would have been a difference. But I don't think it would have at all in terms of the present situation."

A second medical witness, Dr. Joseph Cascino, was called by the respondent. Dr. Cascino, a neurosurgeon, testified that he examined the claimant for neurological findings for approximately one hour in her home on June 7, 1975. On direct examination, Dr. Cascino was asked by counsel for respondent:

"Q. Were you able to make a determination at that time that she was malingering or that she did have an anxiety state?

A. I was unable to. That being the case I would rely more on my opinion that this was a functional or anxiety state.

\* \* \*

Q. What was your diagnosis?

A. That the primary diagnosis that I would have to make here, based on my one examination and what I saw, that the patient had a very large functional component. Or, in other words, an anxiety state."

Another medical witness called to testify by the respondent was Dr. Joseph Geller. Dr. Geller, a general practitioner, testified that he had treated the claimant from 1969 to 1975 for a number of illnesses and injuries. Dr. Geller also stated that he had instructed the claimant to be admitted to Gottlieb Hospital from June 7, 1975, to June 27, 1975, primarily because of a complaint of pain in her left breast. The doctor said he observed the claimant each day during her stay in the hospital. Dr. Geller testified that the claimant was ambulatory when

she entered the hospital, when she left the hospital and, at least half the time, while she was in the hospital. The doctor also testified that the last time he saw the claimant in his office, on September 6, 1975, she had been able to walk and was able to sit on the examining table. On re-cross-examination, Dr. Geller stated that the claimant had assistance in walking to the bathroom during her stay in the hospital.

The respondent asserts that the decision of the Industrial Commission was against the manifest weight of the evidence because Dr. Falk's opinion was based on incomplete information. First, it is argued that Dr. Falk's statement that his diagnosis "might have" been different had he known of the claimant's receipt of a prior award for a leg injury weakens the doctor's diagnosis. We do not agree. Dr. Falk's subsequent response on redirect examination indicated that while a prior injury could have made a difference if it had been more extensive and if there had been a credibility problem, he did not find those conditions to be present in the claimant's case. The doctor's response was clearly an attempt to rehabilitate his prior answer. The meaning and weight to be attributed to the doctor's testimony was for the Commission to determine. *Swift & Co. v. Industrial Com.* (1972), 52 Ill. 2d 490, 495.

Secondly, the respondent argues that Dr. Falk's testimony "tended to" be impeached when he testified he was not certain of whether the claimant deceived him during his examination, but he doubted that she did. Also, the respondent argues that Dr. Falk's testimony was impeached because he was unaware of "Dr. Geller's testimony about previous complaints of arthritis and various back problems and more particularly of the fact that Dr. Geller had seen [the claimant] ambulatory at a time when she claimed not to have been." Again, we are not convinced by this argument. The testimony and medi-

cal records adduced during the hearing constitute evidence; the evaluation thereof and the conclusions to be drawn therefrom were within the peculiar province of the Industrial Commission. *Swift & Co. v. Industrial Com.* (1972), 52 Ill. 2d 490, 495.

It is well established that, where a claimant has suffered an accident causing a total and permanent incapacity for work, it is immaterial that the incapacity exists by reason of a mental disorder rather than a physical one, providing it resulted from the injury. (*Jefferson Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 85, 93; *Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, 563-64; *City of Chicago v. Industrial Com.* (1974), 59 Ill. 2d 284, 287; *Spetyla v. Industrial Com.* (1974), 59 Ill. 2d 1, 5; *Hook v. Industrial Com.* (1972), 53 Ill. 2d 245, 248; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 489; *International Harvester Co. v. Industrial Com.* (1970), 46 Ill. 2d 238, 247; *Thomas J. Douglass & Co. v. Industrial Com.* (1966), 35 Ill. 2d 100, 104.) The record in this case indicates that both Dr. Falk and Dr. Cascino were of the opinion that the claimant suffers from an "agitated depression," an "anxiety state" or a "mild neurosis" caused by the accident in 1973. Both doctors also testified that the claimant was not, in their opinions, malingering. While Dr. Geller's testimony established that the claimant could walk to a certain extent, that testimony is not entirely inconsistent with the claimant's testimony. She testified that she could walk at times with the help of a walker or while wearing a corset with steel stays. Questions relating to witness credibility and conflicting testimony are determined by the Industrial Commission, and will only be set aside if against the manifest weight of the evidence. (*Riteway Plumbing v. Industrial Com.* (1977), 67 Ill. 2d. 404, 408.) The Commission's findings are not against the manifest weight of the evidence, and accordingly they will not be disturbed.

The respondent raises as a second issue the Commission's failure to order an examination of the claimant in a hospital by a physician chosen by the respondent. A review of the record indicates that the motion for an examination pursuant to sections 12 and 19(c) of the Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.12, 138.19(c)) was taken under advisement by the Commission, but never decided. The respondent never attempted to renew the motion; it rested at the close of proof before the Commission. The respondent contends that the motion was impliedly denied and that such a denial was an abuse of discretion. We need not reach that issue, however, because we believe the respondent's failure to renew the motion, when it was provided with sufficient opportunity to do so, waived the right to raise the failure of the Commission to order an examination. *Central Illinois Public Service Co. v. Industrial Com.* (1922), 302 Ill. 27, 31-32.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*