(No. 54094.—

MARGARITO FLORES, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Brake Parts Manufacturing Com-
pany, Appellee).

*Opinion filed November 20, 1981.*

Joseph M. Tobias, of Chicago, for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane and Howard W. Phillips, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Margarito Flores, filed a claim under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) seeking an award of total and permanent disability for back and leg injuries which he alleged arose out of an accident on March 22, 1976, during the course of his employment with respondent, Brake Parts Manufacturing Company. Following a hearing, the arbitrator found that respondent had provided claimant necessary first aid, medical, surgical and hospital services and entered an award for 20 4/7 weeks' temporary total disability and 40 additional weeks for complete and permanent loss of use of 20% of the left leg. On review, after hearing additional testimony, the Industrial Commission affirmed the arbitrator's decision, and the circuit court of McHenry County confirmed the Industrial Commission. Claimant appealed directly here pursuant to Rule 302(a)(2) (73 Ill. 2d R. 302(a)(2)), urging that the evidence compelled a finding of permanent and total disability, and that the Commission's decision is therefore against the manifest weight of the evidence.

Claimant had previously sustained accidental injuries to his lower back and legs in December of 1974 while em-

ployed as a machine operator by Brake Parts. Those injuries resulted in hospitalization and a laminectomy to remove two ruptured spinal discs. He remained under doctor's care but returned to work in October 1975 under a 25-pound weight limitation. His light duties consisted of packaging small parts, placing them in boxes, and loading the boxes on a conveyer belt. He continued to experience pain and in December, pursuant to his physician's advice, remained off the job for one week of rest. In January 1976, an arbitrator awarded him medical expenses and compensation for temporary total disability plus 60% total and permanent loss of use of the right leg for the December 27, 1974, injury. The Commission affirmed that award, and no further review was sought.

On March 22, 1976, while lifting boxes onto the conveyer belt, claimant fell to the cement floor, resulting in the present claim for additional injury to his back. He was taken by ambulance to the emergency room of McHenry Hospital, where he was examined, X-rayed, given pain pills and released. He has not since returned to work at Brake Parts.

At the time of the arbitration hearing in October 1976, claimant had seen his physician, Dr. Ramon Gamez, on several occasions and had again been hospitalized in June 1976. During his hospital stay, a myelogram indicated that he had a defect in the lumbar region at L4-L5, with a narrowed canal at L5 and S1. Dr. Gamez, in his discharge summary, stated that the most likely diagnosis in view of the prior surgery was a scar lesion at L4-L5. The radiologist's report indicated that the extradural impression at the L4-L5 level on the right presumably represented a herniated intervertebral disc, and that a review of the prior myelogram, which was taken just before the February 1975 operation, demonstrated that there then existed a lateral extradural impression at the L4-L5 level on the right. Dr. Gamez advised claimant to again undergo surgery, but claimant decided to think it over and was thereafter dis-

charged from the hospital.

On September 3, 1976, claimant was examined by Dr. Irwin Barnett, one of the physicians who had examined him in 1975 following his prior injury. In his 1976 report Dr. Barnett diagnosed a herniated disc syndrome and a flattening of the 4th and 5th lumbar disc space; in his 1975 report, he had also diagnosed a herniated disc syndrome (in the post-operative state) and a flattening of the 4th and 5th lumbar disc spaces. In his 1976 report Dr. Barnett indicated that there was evidence of severe restriction of motion in the lumbar spine; in his 1975 report, he stated that claimant had marked restriction of all motion in the lumbar spine region. In his 1976 report, Dr. Barnett opined that claimant had a loss of use of both lower extremities; in his 1975 report, he believed claimant had a loss of use of the right lower extremity and a loss of use of the left lower extremity on an industrial basis. Neither report indicated that claimant had a permanent and total disability or was permanently unemployable. In his 1976 report, Dr. Barnett expressed the belief that claimant had sustained traumatic aggravation of his preexisting disc problems. The objective findings in the two reports were not significantly different.

At respondent's request, claimant had been examined by Dr. Sid John Shafer on August 13, 1976. Dr. Shafer's findings were somewhat different from Dr. Barnett's. Dr. Shafer reported that claimant walked with a normal though guarded gait and stood on his heels and toes in a normal manner. The doctor indicated that there was limited motion of the lumbosacral spine in all directions, but that the amount of limitation was very difficult to evaluate because of claimant's great apprehension and failure to cooperate. He also stated that claimant had questionable limited straight leg raising and good function of the lower extremity joints. He advised that claimant attempt to increase his activities and against an operation.

At the hearing before the same arbitrator who presided

at the hearing on the original injury, claimant was the only witness to testify. Speaking through an interpreter, claimant recounted the events leading up to the 1976 incident and testified that thereafter the pain in his back and legs was more severe and constant and that it had now located in both his left and right leg. He stated that he remained at home for the most part, took aspirins and pain pills, wore a brace, walked with a cane, and was unable to work. He further stated that he could not walk or drive for any appreciable length of time and that the pains increased with a change in the weather. He also testified that he occasionally helped with household chores, including vacuuming, washing dishes and cooking, and would sometimes drive his pickup truck to bring his children home from school. He further stated that after the checks for temporary total disability had ceased, he called Brake Parts to inquire whether his job was still available and was told that he could return when the doctor told him that he was feeling well enough.

On cross-examination claimant admitted that during the prior hearing concerning the 1974 accident he testified that he continued to have pain in his back and legs, that he took aspirin and pain pills frequently, that it was painful to walk or drive for any length of time, and that the pain increased with a change in the weather. He also stated that he had seen Dr. Gamez in March of 1976 and had obtained a prescription for pain pills to alleviate continued pain in his back and legs. On redirect examination, claimant testified, consistently with his direct testimony, that prior to the second injury his left leg felt fine; it was the right leg that caused him continued pain. He also stated that the amount of time spent with household chores was limited to very short intervals.

Further evidence introduced on his behalf concerning his medical condition included the June 1976 hospital report containing the results of the second myelogram and Dr.

Gamez' findings, Dr. Barnett's September 3, 1976, report, and a 1975 report by Dr. C. J. Zurfli stating that claimant was an individual with a persistent radiculitis, but that a more definite diagnosis was not possible without further study. Respondent thereafter introduced Dr. Barnett's 1975 report and Dr. Shafer's 1976 report.

On review by the Industrial Commission, claimant called Dr. Barnett as a witness. Dr. Barnett had not reexamined him subsequent to the September 3, 1976, report wherein he indicated that claimant had a loss of the use of both lower extremities. On the basis of his two previous examinations and hypothetical facts presented by claimant's attorney, Dr. Barnett testified that claimant was totally disabled and unemployable. On cross-examination, the doctor conceded that his 1976 findings were essentially the same as those reported in 1975. It was his opinion that the 1975 findings alone indicated an unlikelihood that claimant could have returned to work. He did agree, however, that he had examined men with equally severe findings who had returned to work; he believed that such men had a high tolerance for pain, whereas he found that claimant had an extremely low tolerance for pain.

Claimant also testified on review. He stated that he continued to take medication to alleviate the increasing pain to his back and legs, and that he had twice unsuccessfully attempted to return to work. Once he began driving a pickup truck for a restaurant, but he testified that he could not continue to drive and on his first day turned the wheel over to his helper. On a second occasion, he attempted to assist his friend in a butcher shop, but shortly after arriving he had to leave because of pains in his legs.

Claimant also introduced the medical records of the Rehabilitation Institute of Chicago, where he had undergone a series of examinations during the week of January 11, 1977, for the purpose of determining his eligibility for the Institute's three-week low back and pain program.

Claimant seems to argue that the Rehabilitation Institute's finding that he was not a candidate for their program confirms Dr. Barnett's testimony that claimant is totally and permanently disabled. The Institute's reports do not so state. The reports contain favorable impressions regarding claimant's attempt to cooperate and his willingness to pursue the program, but the several examiners consistently expressed a concern over the language barrier. They believed that special arrangements were necessary, including the use of an interpreter, but that even with an interpreter explanation regarding the behavioral approach to the program would not be easily understood by claimant or his wife if she had decided to participate in the spouse's program. Dr. Robert Addison, the attending physician, concluded:

> "SUMMARY: This patient appears to have an arachonoiditis. Because there is a question of his ability to adjust to the group program and his language comprehension it appears that he would not be able to adjust to the behavior modification program. Alternatives for him would be to see a local anesthesiologist for epidural steroids and to start in a physical therapy mobility program. It would also be of great benefit for him to obtain the services of a Spanish speaking counselor to explain the connections between emotions and pain. At the moment he does not appear to be a candidate for our type of program."

It is, of course, the province of the Industrial Commission to determine the factual issue of the extent and permanency of an employee's medical disability. (*John v. Industrial Com.* (1980), 81 Ill. 2d 145, 151; *Gates Division, Harris-Intertype Corp. v. Industrial Com.* (1980), 78 Ill. 2d 264, 270.) The Industrial Commission must evaluate all of the evidence, including the testimony and medical records adduced (*Veritone Co. v. Industrial Com.* (1980), 81 Ill. 2d 97, 103-04), judge the credibility of witnesses (*Watts v. Industrial Com.* (1979), 77 Ill. 2d 30, 34; *Scott v. Industrial*

*Com.* (1979), 76 Ill. 2d 183), resolve conflicts, and draw reasonable inferences and conclusions from the facts (*Goldblatt Bros. v. Industrial Com.* (1979), 78 Ill. 2d 62, 67). Though a court might draw different inferences, it is axiomatic that the Commission's factual evaluations will not be disturbed on review unless they are contrary to the manifest weight of the evidence. *O'Dette v. Industrial Com.* (1980), 79 Ill. 2d 249, 253; *Phelps v. Industrial Com.* (1979), 77 Ill. 2d 72, 75.

None of the medical reports in this case stated that claimant was totally and permanently disabled. Although Dr. Barnett testified on review that in his opinion claimant was permanently unemployable, he also conceded that his earlier findings were equally severe and would have, in his opinion, precluded further work by claimant. Claimant nevertheless returned to work following his first injury. The meaning and weight to be attributed the doctor's testimony were for the Commission to determine. (*Swift & Co. v. Industrial Com.* (1972), 52 Ill. 2d 490, 495.) It is clear that claimant reinjured his back in March 1976, but the extent to which he aggravated his preexisting condition is not at all clear. The Commission could have determined, based upon the evidence adduced, that the prior award had already compensated claimant for the major portion of his injuries. In view of the evidence tending to establish that there were no significant differences between his condition before and after his second injury, we do not consider that the Commission's determination affirming the arbitrator and awarding petitioner compensation for an additional 20% loss of use of the left leg was against the manifest weight of the evidence.

We accordingly affirm the judgment of the circuit court of McHenry County.

*Judgment affirmed.*