(No. 56778.—

DONALD EDWARDS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Royal Packing Company, Appellee).

*Opinion filed May 18, 1983.*

Jack Randall, of St. Louis, for appellant.

William L. Rogers, of Keefe & De Pauli, P.C., of Fairview Heights, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The claimant, Donald Edwards, sought workmen's compensation for a back injury that he allegedly suffered on October 18, 1976, while employed by the respondent, Royal Packing Company. The arbitrator found that claimant is permanently, partially disabled to the extent of 2% of the man as a whole. On an appeal by claimant to the Industrial Commission, the Commission modified the decision of the arbitrator and held that claimant is not entitled to any compensation because he "failed to prove he sustained any permanent disability as a result of the accident of October 18, 1976 ***."

Claimant appealed the Commission's decision to the circuit court of St. Clair County and the court found that the Commission's decision was not against the manifest weight of the evidence. Claimant then brought a direct appeal to this court (87 Ill. 2d R. 302(a)) alleging that the Commission's decision is contrary to the manifest weight of the evidence and is based solely upon improperly admitted evidence. We affirm the decision of the circuit court.

Three witnesses testified at the arbitration hearing on June 24, 1980: the claimant and two of respondent's employees. Two other witnesses, both physicians, testified by way of deposition.

The claimant testified that on October 18, 1976, he was injured while working as a "beef lugger" in respondent's plant. The injury occurred when he slipped and fell on a piece of fat as he was carrying a side of beef onto a truck. His tailbone hit the ground, and he in-

jured his lower back.

The claimant testified that he promptly notified his supervisor of the accident and that he was sent to the company physician, Dr. Max Goldenberg, who gave him some pills and told him that he could go back to work. The claimant also testified that shortly after the accident he consulted his personal physician, Dr. Dioneda, for treatment of the back injury.

The claimant admitted that after taking several days off he came back to work for the respondent. After lugging the 250-pound sides of beef for another month, the claimant quit his job. He testified that his back injury made it impossible for him to continue lugging beef. Shortly after quitting that job with the respondent, the claimant returned to work for the respondent in another capacity but was discharged after working nearly a month.

After leaving his job with respondent the claimant traveled to Texas, where he worked as a floorman on an oil rig for six months, as a construction worker for about a year, as a dump-truck driver for three months, and as a dairy-truck driver for six months. At the time of the arbitration hearing claimant was employed in a sedentary job in St. Louis, Missouri, which he had held for seven months. The claimant testified that he had sought out this "light" employment because of his back injury even though the job paid one dollar less an hour than the beef-lugging job he had with the respondent in 1976.

The claimant testified that he has had considerable lower back pain since the 1976 accident. He has difficulty bending over and carrying heavy loads. Since the 1976 accident he has been unable to lift more than 100 pounds without pain, whereas before the accident he could lift as much as 400 pounds.

The claimant, however, admitted that on October 11, 1979, he was involved in a highway accident while work-

ing as a dairy-truck driver in Texas. In this accident claimant's head went through the windshield of the truck. His injuries required that he be hospitalized for three days. The claimant maintains that this accident worsened the back injury that he had sustained in the 1976 accident at respondent's plant. He claims that the pain he feels while bending or lifting became more acute after the Texas highway accident.

The claimant's foreman at respondent's plant, George Dietrich, testified that on October 19, 1976, claimant reported that he had hemorrhoids from lifting boxes, but did not mention anything about a fall while carrying a side of beef. On October 20, 1976, Mr. Dietrich filled out and signed a "Report of Employee Accident" form relating that claimant was injured while "loading boxes for freezer" and that the claimant "said he had hemorrhoid trouble picking up 100 lb. boxes." Mr. Dietrich testified that the claimant never mentioned anything to him about a back injury and that if the claimant had complained of such an injury on or about October 18, 1976, it would have appeared in the accident report.

The foreman also challenged the claimant's version of why he left his beef-lugging job with the respondent. Mr. Dietrich testified that the claimant quit his job after repeatedly being told that governmental regulations required that he wear hair protection of some kind while lugging the raw beef:

> "Anytime you're lugging beef your hair had to be covered, and several times [a government inspector] had got on me about [claimant] lugging beef without a hair net on or something on his hair to keep it off the beef, so this morning why he got on me again and I told [claimant] several times, different times about lugging with something on his head. And, I told [claimant] on the next load he'd have to have something or else I'd have to have him quit loading so I walked back out and [claimant] didn't have anything on his head and I said *** I told you to get something on your head. And, *** he got excited and

threw his helmet down, took his coat off and a few choice words, whatever they were, and he walked out and that's the way he walked out."

The respondent's vice-president for personnel and labor relations, Richard Chicholick, testified that the company's time records show that on October 18, 1976, a Monday, the claimant worked a full day. The records also show that the claimant left work a few hours early on October 19, 1976, and that he took off the 20th and 21st, returning to work full time on the 22nd. After the week of the alleged accident the claimant worked full time until November 23, 1976, when he walked off the job after only three hours and five minutes.

At the arbitration hearing the parties also offered medical testimony detailing their versions of the claimant's physical condition. The claimant offered the deposition of Dr. Joseph H. Morrow, Jr., an osteopathic physician and surgeon who examined the claimant for the first and only time on January 9, 1980, at the request of claimant's counsel. Dr. Morrow testified that it was his opinion that the claimant suffered from both lumbosacral sprain and lumbar myositis. Dr. Morrow testified that these conditions would permanently cause the claimant some pain and limit his movement. Based on historical information given to him by the claimant, Dr. Morrow stated the opinion that the claimant's back injury was the result of the 1976 accident at the respondent's plant, and that the 1979 highway accident had aggravated the injury, but was not its principal cause.

The respondent offered the deposition of Dr. Max M. Goldenberg, the respondent's company doctor who examined the claimant on January 23, 1980. Dr. Goldenberg testified that the claimant had told him that he had never had any back pain prior to the 1976 accident at the respondent's plant. The claimant, however, admitted to Dr. Goldenberg that he had injured his neck and back in the 1979 highway accident and that he was given a corset for his back while in the hospital for that injury. The claimant also

told Dr. Goldenberg that, after a month of treatment with a doctor in Texas, he has not had any treatment for the back injury.

As a result of his examination of the claimant, Dr. Goldenberg concluded that "[t]here were no objective findings of residual of his injury consistent with his complaints. *** The manner in which he arched his back in examination replacing his shorts and performing a sit-up, speaks against his having any disability of the back at the time I examined him." Dr. Goldenberg also expressed an opinion that the claimant could perform heavy work of any kind.

In addition to the testimony of Dr. Goldenberg, the respondent offered a medical report that allegedly came from the files of Dr. Dioneda, the claimant's personal physician. The report states that the claimant visited Dr. Dioneda on October 19, 1976, for the treatment of an injury sustained while lifting boxes at work, but makes no mention of a back injury sustained in a fall. The respondent offered this document as evidence that there was no fall or back injury suffered on October 18, 1976. The claimant, however, objected to the admission of this report on the grounds that it was not authenticated as the document of Dr. Dioneda; that it was irrelevant to the question of whether the claimant suffered a back injury; and that no foundation had been laid for its admission as a business record. The arbitrator overruled these objections and admitted the report into the record.

The arbitrator found that the claimant suffers from a permanent partial disability and that he is entitled to compensation to the extent of 2% of the man as a whole. On review, the Commission determined that the claimant is not entitled to any compensation. In explaining its decision the Commission relied on "Dr. Dioneda's report and a lack of any medical evidence of treatment of the lower back until January 1980."

The claimant argues that the Commission's decision is

contrary to the manifest weight of the evidence and based solely upon the report of Dr. Dioneda which was inadmissible. There may be some merit in the claimant's contention that Dr. Dioneda's report was inadmissible; however, we need not decide whether the report was properly admitted, because even if it was inadmissible, the Commission's decision is adequately supported by the manifest weight of the other evidence in the record. *Cf. Martin Young Enterprises, Inc. v. Industrial Com.* (1972), 51 Ill. 2d 149, 156.

In reversing the arbitrator's decision, the Commission did not rely solely on Dr. Dioneda's report. The Commission found that, after the alleged injury, the claimant returned to his beef-lugging job with the respondent and that, contrary to claimant's assertions, he left this job not because of the back injury, but because he refused to comply with governmental sanitation regulations. Moreover, the Commission found that after leaving his job with respondent the claimant had a series of jobs in Texas requiring heavy labor, but until his highway accident in October 1979 he apparently did not seek any medical treatment for the alleged back injury except for the visits to two doctors shortly after the accident. In fact, the only medical evidence that the claimant offered was the testimony of Dr. Morrow, which was based on an examination of the claimant in January 1980 in preparation for the arbitration hearing. By the claimant's own admission Dr. Morrow's examination occurred nearly three months after the highway accident in Texas in which the claimant suffered serious injuries.

The resolution of questions of fact and causation are the Industrial Commission's responsibility (*Odie v. Industrial Com.* (1982), 88 Ill. 2d 514, 519), and the Commission's factual evaluations will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*Flores v. Industrial Com.* (1981), 87 Ill. 2d 48, 55.) None of the Commission's factual findings, noted above,

228

are contrary to the manifest weight of the evidence.

On the basis of these findings of fact, we hold that, even excluding Dr. Dioneda's report, the Commission's finding that the claimant did not suffer any permanent partial disability as a result of the accident of October 18, 1976, is not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*