(No. 56903.—

ASSOCIATED MILLS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (David Lopez, Appellee).

*Opinion filed May 27, 1983.*

358

Raymond M. Simard, of Discipio, Martay & Caruso, of Chicago, for appellant.

Lewis P. Gaines, of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

At issue in this case is (1) whether the Industrial Commission's award of 39 weeks' temporary total disability was against the manifest weight of the evidence and (2) whether the respondent's delay in paying 17 weeks of this compensation justified the Commission's award of penalties and attorney fees under sections 16, 19(k) and 19(l) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.16, 138.19(k), 138.19(l)). The Commission awarded 39 weeks' temporary total disability compensation and awarded penalties and attorney fees. The circuit court of Cook County confirmed the decision of the Commission.

The claimant, David Lopez, was working in the shipping department of respondent, Associated Mills, Inc., on April 4, 1978, when he injured his right knee while lifting four large boxes. The parties stipulated before the arbitrator that the claimant's knee injury arose out of and in the course of his employment and that the respondent had already paid all medical expenses associated with the injury. The parties also stipulated that the respondent paid the claimant $2,552 in compensation, which represented 22 weeks' temporary total disability through October 18, 1978.

At the arbitration hearing the principal disputes between the parties were the extent, if any, of the claimant's permanent partial disability and whether the claimant was entitled to 17 weeks' additional compensation for temporary total disability covering the period from October 18, 1978, to February 5, 1979. The arbitrator found that the claimant suffered the permanent and

complete loss of use of his right leg to the extent of 40% thereof and that he was entitled to compensation for that permanent disability. The arbitrator also found that the claimant was entitled to 17 weeks' additional temporary total disability.

Both the Commission and the circuit court upheld the award of permanent partial disability, and the respondent no longer disputes the merit of that award. The Commission also affirmed the award of 17 weeks' additional temporary total disability benefits and found that the respondent was also liable for penalties of $3,486 and attorney fees of $1,091.61 for its failure to pay the claimant temporary total disability for the period from October 18, 1978, to February 5, 1979. The circuit court affirmed both the award of temporary total disability and the award of penalties, and the respondent appeals directly to this court (87 Ill. 2d R. 302(a)).

The respondent claims that the company physician who was treating the claimant released him for work on October 18, 1978. Accordingly, the respondent argues that the claimant is not entitled to any compensation for temporary total disability after that date. Although the claimant did not work after that date, the respondent explains that this was attributable to layoffs at the company's plant because of a recession in the economy. The claimant, however, answers that the treating physician released him only for light-duty work on October 18, 1978, and that he was not released for full-duty work until February 5, 1979, when he was completely discharged from treatment by the company physician.

The claimant stated that he went to the company physician for treatment on several occasions after his April 4, 1978, accident. Eventually the physician recommended surgery, which was performed on May 19, 1978, and required a hospital stay of several weeks. After his discharge from the hospital the claimant continued to

visit the company physician for treatment and observation. The claimant testified that the company's physician released him for light duty on October 18, 1978, but that he was unable to obtain light duty from the respondent because "they didn't have any light jobs for me." The claimant stated that he was finally discharged from treatment on February 5, 1979, and on that date he went to the respondent's plant to return to work. A manager of the company told the claimant that there were no jobs available for him "because the job was low"—apparently referring to layoffs due to the recession.

The respondent contends that reports sent to it by the physician who was treating the claimant contradict the claimant's testimony concerning the date he was released for full-duty work. Ten of these reports were sent to the respondent by the treating physician commencing with the claimant's discharge from the hospital on June 2, 1978, and concluding with his discharge from treatment on February 5, 1979. In the report dated July 27, 1978, the physician noted that "[p]ossibly patient could do some light work at this time." In the reports dated August 24, September 11 and September 25, the physician noted that, although the claimant had been advised to return to light work, the respondent could not take him back to work because there was no light work available for him. On the September 25 report the physician also noted that "[the claimant's] temporary disability will be extended about three weeks" and checked a box marked "Not Recommended For Work Through 3 weeks."

Three weeks later, in a report dated October 16, the physician noted that "[the claimant] is advised to return to work on 18 Oct. 78" and checked a box marked "To Return To Work 18 Oct. 78." In this report, and in subsequent reports dated November 13 and December 11,

the physician made no mention of releasing the claimant for light duty only. In the later two reports the physician did observe that the claimant had been released for "work," but that none was available.

On a slip dated February 5, 1979, and handed to the claimant, the physician noted: "David Lopez *** to return to work. Discharged from care. No need to return." On this slip the physician checked a box marked "Recommended For Work."

In order to find that the claimant was eligible for temporary total disability for the 17 weeks between October 18, 1978, and February 5, 1979, the Commission had to determine that it was not until the latter date that his recovery from the knee injury had advanced as far as the character of the injury permitted. (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 586.) The Commission's resolution of a disputed factual issue will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*Odie v. Industrial Com.* (1982), 88 Ill. 2d 514, 519; *Flores v. Industrial Com.* (1981), 87 Ill. 2d 48, 55.) Although the evidence presented on this issue was conflicting, and on the whole could fairly have supported the position of either party, we cannot say that the Commission's decision on this issue was contrary to the manifest weight of the evidence. The claimant testified that he was not released for work on a full-duty basis until February 5, 1979. Although the physician's reports to the respondent easily could be construed to contradict this testimony, they are somewhat ambiguous and capable of a construction that would support claimant's testimony as well. These reports, therefore, are neither clear nor persuasive enough to warrant a reversal of the Commission's findings.

The reports, however, are persuasive enough to require a reversal of the Commission's award of penalties and attorney fees under sections 16, 19(k) and 19(*l*) of

the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, pars. 138.16, 138.19(k), 138.19(*l*)). "These sections are intended to prevent bad faith and unreasonable withholding of compensation benefits from injured workers. \*\*\* Illinois courts have refused to assess penalties under these sections where the evidence indicates that the employer reasonably could have believed that the employee was not entitled to the withheld compensation." (*Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 9; see also *Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297.) To award penalties and attorney fees under these sections in this case the Commission had to find that the respondent could not have reasonably believed that the claimant's right to compensation for temporary total disability terminated on October 18, 1978.

This finding of the Commission is against the manifest weight of the evidence, and accordingly the award of penalties and fees must be reversed. The reports that the treating physician sent to the respondent clearly indicated that he first released the claimant for light-duty work on July 27, 1978, not October 18, 1978, as the claimant testified. Although, as stated above, the subsequent reports are somewhat ambiguous, they sustain the reasonableness of the respondent's belief that the claimant was released for full-duty work on October 18, 1978, and no longer entitled to any compensation for temporary total disability. All the reports prior to October 18 refer to release for "light duty" work. The reports after that date only refer to release for "work." In addition, in the October 16 report the physician checked the box marked "To Return To Work," whereas in prior reports he had either checked no boxes or checked the box marked "Not Recommended For Work." Moreover, the physician noted in the September 25 report that "[the claimant's] temporary disability will be extended about

three weeks," but did not refer in any of the later reports to the extension of the temporary disability. These reports could have reasonably led the respondent to conclude that the claimant was sufficiently recovered by October 18 to return to full-duty employment and that the claimant only continued returning to see the physician once a month until February 5, 1979, to observe his condition. Thus we hold that the Commission's award of penalties and attorney fees is against the manifest weight of the evidence.

For these reasons we affirm the judgment of the circuit court insofar as it confirmed the Commission's award of 39 weeks' temporary total disability, but we reverse the circuit court's confirmance of the award of penalties and attorney fees. The cause is remanded to the Commission for issuance of a corrected award in conformance with this opinion.

*Affirmed in part and reversed in part; cause remanded, with directions.*