UNITED STATES STEEL CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jerome Milerowski, Appellee).

First District (Industrial Commission Division)   No. 1—84—1660WC

Opinion filed March 29, 1985.

Rooks, Pitts & Poust, of Chicago (Ian M. Sherman, of counsel), for appellant.

Cornfield and Feldman, of Chicago (Linzey D. Jones, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Respondent, United States Steel Corporation, appeals from a judgment of the circuit court of Cook County confirming an Industrial Commission decision which reversed the denial of compensation by an arbitrator and made an award to claimant Jerome Milerowski for loss of hearing.

On appeal, respondent contends that (1) the Commission's finding that claimant met his burden of showing an exposure to noise with the intensity of 90 decibels or more for eight hours, or its time-weighted equivalent, was legally erroneous; and (2) certain other de-

terminations of the Commission were against the manifest weight of the evidence.

Claimant, who was the only person to testify at the hearing of the arbitrator on December 10, 1979, stated that he had been employed by respondent for 20 years—18 of which were in its Blooming Mill, where he had been a millright for 16 years—and is presently working as such in the mill. He testified that the mill was always very noisy and that he and other employees had to holler or shout to communicate even from distances of 3 to 4 feet. He described the noise as pounding, banging, and slamming as ingots were being rolled, with loud explosions also occurring when the ingots made contact with air or salt pockets. He also testified that these noisy conditions existed as long as he has worked in the mill—which has been since 1959.

He first noticed difficulty with his hearing in 1976, and when it worsened he went to see Dr. Ralph F. Naunton, at Billings Hospital, on April 28, 1978. Dr. Naunton examined his hearing on that day and, a week later, did an audiometric examination, after which he prescribed a hearing aid. Claimant has been wearing the aid every day except while working in the mill, where he has been wearing earmuffs and ear plugs provided him by respondent "about a year ago" (which would have been December 10, 1978).

In response to a subpoena calling for all sound surveys at the Blooming Mill, respondent produced only a December 1963 survey, which showed sound-level values at that time of from 90 to 103 decibels at various sites in the mill.

The following medical reports were received in evidence by agreement: (a) from Dr. Naunton, whose evaluation showed "a severe bilateral symmetrical sensori-neural or nerve impairment consistent with age change plus rather severe damage to hearing from exposure to noise"; (b) from Dr. Marshall U. Simon, who examined claimant on March 23, 1979, at the request of claimant's attorney, and whose report showed "a marked bilateral sensori-neural type of hearing loss in both ears" and whose diagnosis was "acoustic trauma with severe loss of auditory acuity"; (c) Dr. Edward L. Applebaum, who examined claimant on February 9, 1979, at the request of respondent, and found that he had "bilateral sensori-neural hearing loss compatible with presbycusis and (although not typically) noise induced hearing loss"; (d) Dr. M. Reese Guttman, who examined claimant on August 30, 1979, at the request of respondent and found that claimant's hearing loss was consistent with bilateral presbycusis consistent with his age and "was neither caused nor aggravated by noise exposure and is unrelated to his employment."

The arbitrator denied compensation, finding that claimant had failed to prove that his hearing loss was the result of an occupational disease. The Industrial Commission reversed that decision and awarded compensation on the basis of exposure to excessive noise levels at his place of employment. This decision was confirmed by the circuit court of Cook County, and this appeal followed.

OPINION

■ Concerning respondent's first contention that the Commission's finding that claimant met his burden of showing an exposure to noise with the intensity of 90 decibels or more for eight hours was legally erroneous, we initially note that the Commission had adopted hearing-loss guidelines covering exposure to noise between July 1, 1975, when the Workers' Occupational Diseases Act (the Act) first provided for partial loss of hearing, and September 15, 1980, the effective date of an amendment to the Act adopting those guidelines. One of these guidelines (Rule 13—(1)), entitled "Causal Connection," provided as follows:

> "The Industrial Commission shall use the following rebuttable presumptions to determine whether exposure between July 1, 1975 and September 15, 1980 to industrial noise caused a hearing loss:
>
> (a) Exposure to noise with the intensity of 90 decibels or more for 8 hours or its time weighted equivalent causes hearing loss, and
>
> (b) Exposure to noise with the intensity of less than 90 decibels or less for 8 hours or its time weighted equivalent does not cause hearing loss."

The Commission, in its decision here, found:

> "1. Petitioner was exposed to noise in excess of 90 dba for an eight hour day or the time weighted equivalent. Based on Petitioner's unrebutted testimony that he was exposed to a described level of noise, based on the Commission's expertise, Petitioner has described noise levels in excess of 90 dba, and Respondent has not introduced any evidence contrary to Petitioner's unrebutted testimony."

Respondent argues that this finding was "legally erroneous" because the Commission relied only upon its expertise and claimant's testimony; whereas, in fact, claimant did not sustain his burden of showing an exposure to noise as set forth in Rule 13—(1)(a).

We note, however, that, in response to a subpoena to produce all sound-level tests taken at its plant, respondent produced a single sur-

vey made in December 1963, showing sound levels of from 90 to 103 decibels at various sites in the Blooming Mill. This survey was introduced into evidence by claimant, who also testified that the noise, as described in the outline of his testimony above, existed during the entire time he worked for plaintiff—which was since 1959. While respondent argues that the Commission erroneously relied on its own expertise, we find that claimant made a *prima facie* showing of hearing loss resulting from an exposure to noise as set forth in Rule 13—(1)(a).

■■ ■ Plaintiff next contends the Commission's finding that claimant's hearing loss was causally connected to his exposure to excessive noise at work was against the manifest weight of the evidence. We initially note that the Commission was not bound by the findings of the arbitrator (*Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87, 411 N.E.2d 249), and its decision will not be disturbed on review—even where its factual evaluations differ from those of the arbitrator on the same evidence (*Edwards v. Industrial Com.* (1983), 96 Ill. 2d 278, 449 N.E.2d 1335)—unless the decision is contrary to the manifest weight of the evidence (*Flores v. Industrial Com.* (1981), 87 Ill. 2d 48, 429 N.E.2d 479). While it is true, as respondent points out, that Doctors Applebaum and Naunton found evidence of hearing loss which was consistent with aging, and that Dr. Guttman found his hearing loss was due to age and "neither caused nor aggravated by noise exposure," we note that Dr. Naunton additionally reported that claimant had rather severe damage to his hearing from exposure to noise, that Dr. Applebaum found that claimant's hearing loss was compatible with aging and noise-induced hearing loss, and that Dr. Simon made a diagnosis of "acoustic trauma with severe loss to auditory acuity." Considering these findings in the light of claimant's testimony and the fact that respondent presented no evidence other than the reports of Doctors Applebaum and Guttman, we conclude that the Commission's finding that claimant's hearing loss was causally connected to excessive noise exposure was not against the manifest weight of the evidence.

■ Respondent next posits that the finding of the Commission that claimant's exposure to excessive noise level was terminated on December 10, 1978, when he began using ear plugs, was against the manifest weight of the evidence.

The Act provides that "[n]o compensation shall be payable for on or account of any occupational disease unless disablement, as herein defined, occurs within two years after the last day of the last exposure to the hazards of the disease ***." (Ill. Rev. Stat. 1979, ch. 48,

par. 172.36(f).) Based upon claimant's testimony that he was provided ear plugs by respondent a year prior to the hearing before the arbitrator—which was on December 10, 1979—the Commission found that he was last exposed to excessive noise on December 10, 1978. Respondent suggests that claimant should have "presented evidence on the nature and effect of the ear plugs and whether he was thereafter exposed to any noise levels." While such evidence would have further supported the Commission's finding, we think that it reasonably could have inferred that respondent would not have given claimant the earmuffs and ear plugs if they did not serve the purpose intended, that is, to eliminate excessive noise, and because claimant began to use them for that purpose on December 10, 1978, and continued to use them thereafter, we find support for the Commission's finding of that day as the date of last exposure.

We turn then to the contention of respondent that the Commission's findings of a 73% loss of hearing in the left ear and 69% in the right ear were against the manifest weight of the evidence. Rule 13—(2) of the Commission provides in pertinent part:

"The percentage loss of hearing shall be calculated using the average, in decibels, of the thresholds of hearing for the frequencies of one thousand, two thousand and three thousand cycles per second. If such losses of hearing average thirty decibels (ANSI) or less in the three frequencies, such losses of hearing shall not constitute any hearing disability. If the losses of hearing average eighty-five decibels (ANSI) or more in the three frequencies, such losses of hearing shall constitute total loss of hearing."

Respondent argues that, in its determination of the percentages of lost hearing, the Commission disregarded the audiograms of the other doctors in using the percentages found by Dr. Guttman. We note, however, that Rule 13—(2) does not require—as respondent suggests—that an average of the percentages found by all of the examining doctors should be used, but only that lost hearing "shall be calculated using the average in decibels of the thresholds appearing for the frequencies of 1,000, 2,000 and 3,000 cycles per second." Here, we note that only Doctors Applebaum and Guttman, both of whom examined claimant at the request of respondent, made findings at all three frequencies, and that Dr. Guttman's examination was more recent than that of Dr. Applebaum's by more than 6½ months, and it was preeminently the right of the Commission to choose between the views of the medical experts. *Beck v. Industrial Com.* (1965), 32 Ill. 2d 148, 152, 204 N.E.2d 7, 9.

We conclude that the acceptance by the Commission of the loss-of-hearing findings of Dr. Guttman, respondent's examining doctor, was not against the manifest weight of the evidence.

For the reasons stated, the judgment is affirmed.

Affirmed.

WEBBER, P.J., and LINDBERG, BARRY, and KASSERMAN, JJ., concur.