ETHEL HUDGENS, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*
(Hoeffken Brothers, Inc., Appellant).

Fifth District (Industrial Commission Division)   No. 5—89—0744WC

Opinion filed August 15, 1991.—Rehearing denied October 29, 1991.

William L. Rogers, of Keefe & DePauli, P.C., of Fairview Heights, and Lynn E. Newmark, of Hayes, Newmark & Steigerwald, of St. Louis, Missouri, for appellant.

George R. Ripplinger, Jr., of Ripplinger, Dixon & Johnston, of Belleville, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The petitioner, Ethel Hudgens, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*). She sought to recover damages for alleged work-related injuries arising from her employment with the respondent, Hoeffken Brothers, Inc. The arbitrator found in favor of the respondent. On review, the Industrial Commission (Commission) found that the petitioner had failed to file a written summary or brief as required by Commission rules. It therefore held that it had no reason to change the arbitrator's decision and as such affirmed it without reviewing the merits of the case. The circuit court reversed the Commission's decision and remanded the case, finding that the Commission could not summarily affirm the arbitrator without ruling on the merits.

On remand, the Commission affirmed the arbitrator after reviewing the merits of the case. The circuit court subsequently reversed the Commission. It found that the petitioner had sustained injuries arising out of and in the course of her employment and that a causal relationship existed between the injuries and the petitioner's condition of ill-being. It therefore awarded the petitioner temporary total disability benefits and found that she was totally and permanently disabled by reason of her psychological injury. The respondent appeals.

This case involves allegations of both physical and psychological injuries arising from the same incidents. The record shows that on

August 2 and 5 of 1982, the petitioner was working as a truck driver for the respondent. She testified that on August 2 a load of dirt was put in her truck. The load, however, was too heavy and she could not move the truck. Following normal procedure, another truck arrived to push her truck and get it going. She stated that when the second truck hit her truck she was thrown forward, causing her knees to hit the bottom of the steering column. This happened about six times before her truck was finally freed. She did not go to work on the third or fourth, because her back, shoulder, and legs were stiff.

On August 5, her truck became stuck in a field where she was dumping dirt. Again, another truck came to push her out and she was again thrown forward. She did not recall hitting anything with her body, but after that her back and shoulders began hurting. She reported these injuries to the respondent on August 8, 1982. Neither party produced any witnesses to confirm or refute the petitioner's claim that these incidents occurred.

The petitioner also testified that since the incidents her back had continually hurt and she could not stand or sit in one position for too long. Furthermore, her knees hurt when she went up and down stairs or tried to walk too far.

The petitioner testified that she saw the following doctors for treatment of her injuries. She first saw Dr. Frick, a chiropractor, but stopped seeing him because she felt he was not helping her. She then saw chiropractors Roy B. Conkling and Arthur L. McAuliffe, whose opinions are set out below. On Dr. Conkling's advice, she saw Dr. Climaco, a neurosurgeon, who recommended that she see a psychiatrist. She then saw Dr. Rodriguez, an orthopedic surgeon. However, she quit seeing him because she felt he was not helping her.

Thereafter, she saw Dr. Miller, an orthopedic surgeon, who ordered an arthrogram. This was performed at Oliver C. Anderson Hospital on February 18, 1983. Dr. Miller refused to treat her further because she refused to take Zomac, a medication he prescribed. She then saw Dr. Fritsch, an orthopedic surgeon, who gave her an injection in her knee and ordered her to wear a knee brace. He refused to treat her further because she could not pay for his services.

She also saw orthopedic surgeons Shu-Fang Chen and Sherman J. Wayne. In addition, she saw psychiatrists Edwin Wolfgram and Leonard Wiedershine. Each of these doctor's opinions is set forth below.

The petitioner also testified regarding incidents of sexual harassment. On August 2, when she pulled her truck under the loader to

fill it, the man operating the loader told her he wanted to go to bed with her. She waved him away. On August 5, she was informed by another employee that Bill Kiser, the respondent's mechanic, wanted to "get into her pants." She also stated that she had been sexually harassed by fellow employees since April of 1982. As a result, she contacted Robert Miller, the respondent's vice-president in charge of labor relations, on August 2, 1982.

Miller testified that he met with the petitioner on August 4, 1982. She told him that she was forced to drive unsafe equipment and that she was forced to work under unsafe conditions. She also told him that on August 2, 1982, the loader operator had stated that he wanted to go to bed with her. She did not complain about any other incidents of sexual harassment.

The medical records regarding the physical injuries show that the petitioner sought the care of chiropractor Roy B. Conkling on August 23, 1982. In his deposition, Dr. Conkling testified that the petitioner told him she was injured at work when her truck was struck by another truck on two separate dates. She complained that she was suffering from pain in her neck, back, and knees. In Conkling's opinion, the petitioner's injuries were caused by the two incidents. He said the incidents aggravated a preexisting condition and that the petitioner was totally disabled from August 5, 1982, to December 14, 1982, the date of the deposition.

Dr. Conkling sent the petitioner to chiropractor Arthur L. McAuliffe for consultation. His report was consistent with Dr. Conkling's report that the petitioner suffered a traumatic knee sprain.

The petitioner began seeing her current orthopedic surgeon, Dr. Chen, on March 17, 1983. In his deposition, Dr. Chen stated that the petitioner told him she was injured when another truck slammed into a truck she was driving. This occurred on both August 2 and August 5 of 1982.

He noted that she had minor swelling in her left knee and crepitation in both knees. In addition, the prior arthrogram showed the possibility of chondromalacia patella in both knees. He performed arthroscopic surgery on her left knee and recommended surgery for the right knee.

In his opinion, the petitioner's back and knee problems were the result of the trauma she suffered on August 2 and 5 of 1982. He also stated that she had been disabled and unable to perform her job since August 5, 1982.

Dr. Wayne testified on behalf of the respondent. He stated that he examined the petitioner on September 1, 1982, and again on De-

cember 7, 1984. Regarding the history the petitioner gave him on her first visit, he stated that she told him she had been injured at work. His notes regarding her history also showed that the witnesses at the scene discounted the idea that the impact was great enough to cause any significant jarring of the petitioner. He testified that his examination revealed no injury to her knees, back, or neck and as such it was his opinion that she needed no medical treatment.

Following the December 7, 1984, examination, he found some signs of bilateral patellar malalignment and chondromalacia. While he admitted that these conditions could have been caused by trauma, it was his opinion that they were preexisting problems not caused by the incidents in question.

The medical evidence regarding the petitioner's psychological problems shows that she sought the care of psychiatrist Edwin Wolfgram. Although the evidence regarding the date the petitioner first consulted Dr. Wolfgram is conflicting, it appears that her first appointment was on September 10, 1982. Dr. Wolfgram testified that the petitioner told him about the incidents occurring on August 2 and 5 of 1982. She also told him that she was being harassed at work, that she was given defective equipment, and that she was subjected to repeated requests for sexual favors. In addition, she informed him that she had been married six times and had four children.

Dr. Wolfgram stated that the injuries sustained in August of 1982 aggravated her already depressed state and worsened her condition to the extent that she was having severe depressive mental symptoms. In his opinion, the petitioner was suffering from major depression and single episode psychotic and psychogenic disorder, both of which were caused by the injuries she sustained while employed with the respondent in August of 1982. He also stated that as a result of her mental condition she was unable to perform her job and that her psychological problems were permanent.

The petitioner was also examined by psychiatrist Leonard Wiedershine at the request of the respondent. Dr. Wiedershine testified that he examined the petitioner on December 10, 1982, and at that time she informed him about the injuries occurring in August of 1982. She also told him that she had been sexually harassed at work.

In his opinion, the petitioner would not lie and was likely to deny any major psychological difficulties. In addition, she would downplay her physical problems. He stated that she was depressed and had pain in her lower back and knees on the day of his examination. He

also stated that the sexual harassment she received while working for the respondent was causing her psychological problems.

Dr. Wiedershine testified that the petitioner was mildly depressed but her condition was not permanent. It would, however, worsen if she returned to work for the respondent. He stated that the incidents that occurred in August of 1982 were connected with her psychological problems. However, he also attributed some of her problems to unstable family relationships.

He found that the petitioner's level of depression could change from day to day and that he would defer to her treating psychiatrist as to her condition on other days. He also testified that often individuals with numerous problems in their lives are able to cope until some catalytic event pushes them over the line. This is true even though the event may seem minor to someone else.

From the foregoing, the arbitrator found that the petitioner's present condition of ill-being was not causally connected to the incidents occurring in August of 1982.

The Industrial Commission found that the petitioner had failed to file a written summary or brief as required by Commission rules. It therefore held that it had no reason to change the arbitrator's decision and as such affirmed the arbitrator's decision without reviewing the merits of the case. The circuit court reversed the Commission and remanded the case, finding that the Commission could not summarily affirm the arbitrator without ruling on the merits.

On remand, the Commission affirmed the arbitrator after reviewing the merits of the case. The circuit court reversed and remanded. It found that the petitioner had sustained injuries arising out of and in the course of her employment and that a causal relationship existed between the injuries and the petitioner's condition of ill-being. It therefore awarded her temporary total disability benefits and found that she was totally and permanently disabled by reason of her psychiatric injury.

The respondent first argues on appeal that the circuit court was without jurisdiction to hear the case because the petitioner failed to meet the statutory requirements of section 19 of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19). Specifically, it contends that the petitioner failed to file a receipt or affidavit showing that she paid the necessary fees to the Commission within the statutory 20-day limit.

The record shows that the date at issue is August 1, 1985, and that the statute cited by the respondent did not take effect until September 25, 1985. The applicable statute provides in relevant part:

"[N]o request for a summons may be filed and no summons shall issue unless the party seeking to review the decision of the Commission shall exhibit to the clerk of the Circuit Court a receipt showing payment of the sums so determined to the Secretary or Assistant Secretary of the Commission." Ill. Rev. Stat. 1983, ch. 48, par. 138.19(f)(1).

■ The requirements of this section are met when payment is in fact made before the summons is issued; the clerk, before issuing the summons, is shown the receipt showing that the payment has been made or is otherwise satisfied that it has been paid; and the record of the circuit court reflects how this was accomplished. *Arrington v. Industrial Comm'n* (1983), 96 Ill. 2d 505, 451 N.E.2d 866.

■ Here, the record shows that the Commission issued a receipt on July 30, 1985, showing that it received a check from the petitioner. Further, according to the petitioner's attorney, on August 1, 1985, he filed a "Request for Summons" after he physically exhibited the receipt to the clerk.

The respondent argues, however, that the receipt could not have been shown to the clerk on August 1, since it was not received by the petitioner until August 2. As evidence of this, the respondent points to a stamp on the attorney's copy of the receipt which shows that it was received in the petitioner's attorney's office on August 2.

However, the petitioner's attorney explained this discrepancy in an affidavit in which he stated that he received the receipt from the Commission on August 1 and thereafter proceeded directly to the clerk's office to show him the receipt. He did not place the receipt in the petitioner's file until August 2, 1985. As such, we find that the record established that the petitioner complied with the requirements of the Act.

The respondent next argues that the circuit court erred in finding that the petitioner's condition of ill-being was causally connected to the injuries she sustained in August of 1982.

■ For an injury to arise out of one's employment, the injury must have an origin in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the injury. (*Fire King Oil Co. v. Industrial Comm'n* (1976), 62 Ill. 2d 293, 342 N.E.2d 1.) A claimant may be compensated for a work-related injury which results in a mental disorder that leads to disability. (*Veritone Co. v. Industrial Comm'n* (1980), 81 Ill. 2d 97, 405 N.E.2d 758.) The Commission is the judge of the credibility of the witnesses and the weight to be given their testimony. It is for the Commission to decide which of two conflicting medical opinions

given in a case is to be accepted, and its decision will not be disturbed unless it is against the manifest weight of the evidence. *Chicago Rotoprint v. Industrial Comm'n* (1987), 157 Ill. App. 3d 996, 509 N.E.2d 1330.

Here, the Commission apparently found that the petitioner did suffer injuries which arose out of and in the course of her employment. However, it concluded that the injuries and her condition of illbeing were not connected. We find that the Commission's decision was against the manifest weight of the evidence.

■ While the medical records regarding the cause of the physical injuries are conflicting, the records regarding the cause of her mental illness are not. Both Dr. Wolfgram and Dr. Wiedershine testified that the petitioner's psychological problems were connected with the injuries she sustained in August of 1982.

Furthermore, with regard to the physical injuries, the testimony of Dr. Wayne is somewhat incredible given that he examined the petitioner 30 days after the incidents and found no evidence of any injuries or damage. Yet two years later when he again examined her, he found that her knees were damaged. In his opinion, though, this damage was not caused by the incidents occurring in August of 1982, but rather was the result of incidents occurring prior to that time.

Therefore, based on the medical records, we conclude that the Commission's finding that the petitioner's physical and mental conditions of ill-being were not causally connected to the injuries she sustained was against the manifest weight of the evidence.

The respondent's final argument is that the circuit court erred in finding that the petitioner was permanently totally disabled due to her psychological problems. It contends that this issue was not litigated below since the cause before the arbitrator was a section 19(b) proceeding. As such, the parties stipulated that the only questions before the arbitrator were causal connection and TTD.

Section 19(b) provides:

> "The Arbitrator or committee of arbitration may find that the disabling condition is temporary and has not yet reached a permanent condition and may order the payment of compensation up to the date of the hearing, which award shall be reviewable and enforceable in the same manner as other awards, and in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability, but shall be conclusive as to all other questions except the nature and extent of said disability." (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(b).)

In a section 19(b) proceeding, the arbitrator is limited to the issue of temporary disability. *Thomas v. Industrial Comm'n* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322.

■ Here, the petitioner filed a petition for immediate hearing under section 19(b). However, at the proceeding before the arbitrator, both parties introduced evidence regarding the extent of the petitioner's disability. The petitioner argues that since the issue was fully litigated below, the circuit court had the authority to find her to be temporarily and permanently totally disabled even though neither the arbitrator's nor the Commission's decisions addressed the issue of permanent disability.

However, we find that as stated in *Thomas*, a section 19(b) proceeding is limited to the issue of temporary disability. Further, we note that the Commission did not make a finding on either temporary or permanent disability. As such, even if it could be construed that in this case the proceeding became a hearing on temporary and permanent disability, allowing the circuit court's decision to stand would allow it to become the trier of fact rather than a court of review. We affirm the circuit court's reversal on the issue of causality and hold the Commission's decision on this issue was against the manifest weight of the evidence. We also hold the circuit court's judgment granting temporary and permanent disability should be reversed, and the cause remanded to the Commission for determination of the nature and extent of temporary disability.

The judgment of the circuit court of St. Clair County is affirmed in part, vacated in part, and remanded for proceedings consistent with this decision.

Affirmed in part, vacated in part, and remanded.

McCULLOUGH, P.J., and McNAMARA, WOODWARD, and LEWIS, JJ., concur.