(No. 44707.)

SWIFT AND COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* —(Clarence Combs, Appellee.)

*Opinion filed October 2, 1972.*

RISSMAN, JENKINS & KLEIN, of DeKalb (ROBERT C. JENKINS, of counsel), for appellant.

TUITE, MORRISSEY, GESMER & FINNEGAN, of Rockford (JASON N. GESMER and GERALD F. TUITE, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Ogle County confirming the Industrial Commission's affirmance of an arbitrator's award. The arbitrator awarded compensation to the employee, Combs, for the loss of use of the left and right legs to the extent of 15 per cent and 5 per cent thereof, respectively, because of the injuries sustained.

The employer, Swift and Company, contends that the findings of the Industrial Commission are against the manifest weight of the evidence. It is also Swift's position that Combs's credibility was destroyed by impeachment.

On August 24, 1967, Combs was employed by Swift as a sheep-skinner. He testified that while stripping the hide from a sheep, he slipped from a platform which was raised about six inches off the floor and his left knee struck the floor, that his left arm was caught between the body of the sheep and the skin, and that he heard a pop in his back. He stated the accident was witnessed by a fellow employee, whom he knew as "Max" or "Mac", and that he reported the accident right away to his supervisor. He finished his day's work and the next morning the pain in his shoulders, arms, and back was so bad that his wife had to help him out of bed. Upon reporting to work, he went directly to the medical department. The nurse there referred him to Dr. Townsend, the company doctor, who prescribed physical therapy treatments. He returned to

work three weeks later. He worked approximately two weeks and the pain in his neck, arms, back and legs became worse. Between that date and June 11, 1968, he worked only periodically and was attended by his family doctor, two orthopedic surgeons, a neurologist and a psychiatrist and had been admitted to hospitals on various occasions for therapy and observation. However he continued to complain of the pain in his neck, back and arms. After he was discharged from the hospital on June 11, 1968, and returned to work, the symptoms persisted. The personnel director told him that he either had to return to work or be fired. Thereupon Combs moved back to his home in Bloomington, Indiana, where he attempted to work for a food delivery service, which employment he terminated after three weeks because of the same symptoms.

No medical doctors testified at the hearing before the arbitrator, but by stipulation of counsel the reports and findings of the various doctors were admitted into evidence, including the report of Dr. Samuel Rubert, who examined Combs at his request on September 6, 1969. Dr. Rubert's report contained the following:

"DIAGNOSIS: Strain, thoracic spine, right and left rhomboid areas with right and left shoulder rhomboiditis, right and left shoulder pericapsulitis.

Strain, lumbosacral spine, flattened lordocit curve, disc syndrome changes with nerve root irritation; right and left leg sciatica and disc pathology.

REMARKS: Findings resulting from the injury, accounting for complaints presented by the patient, limiting work activity and work potential with permanent partial disability and pathology resulting from thoracic and lumbar spine changes, upper and lower extremity changes."

The report of Dr. Rubert was the only medical evidence offered by Combs. All of the other medical reports were introduced as evidence by the employer, Swift.

The report of Dr. Kernwein, an orthopedic surgeon,

dated December 13, 1967, stated that the X rays of the cervical spine were entirely normal, that there were no objective findings to account for Combs's subjective complaints. Dr. Kernwein again examined Combs on January 2, 1968, and concluded there were no objective findings.

Dr. Marquardt, an internist, examined Combs on March 6, 1968. His report stated that it was his feeling that Combs had a stretch injury to the cervical plexus on the left side, that he should be admitted to the hospital for conservative care, that basically he was a man in good health and found no abnormalities in the medical examination.

Dr. Marquardt referred Combs to Dr. Kernahan, another orthopedic surgeon, who examined Combs on February 23, 1968, and noted that " in slipping, he ended up falling forward and his left arm was abducted and externally rotated and he found himself with a sheep under his axilla. This would correspond to a stretching sort of injury for the cervical plexus." It was the opinion of Dr. Kernahan that Combs had a stretching injury to the cervical plexus on the left side, which was not marked but which has left him with some numbness. On May 28, 1968, Dr. Kernahan again reported to Dr. Marquardt that when Combs was re-examined by him, he was in considerable distress, with a marked spasm of the lumbar paravertebral musculature and stated that he should be re-admitted to the Wesley Memorial Hospital.

The office notes of Dr. Kernahan made after Combs's re-admission to the hospital indicated that the physical problems had virtually disappeared and that Combs's problem was an emotional one. Dr. Blonsky, a neurologist, reported that Combs's physical disability resulting from trauma was minimal and diagnosed Combs as an emotionally unstable personality. The report of Dr. Shlensky, a psychiatrist, was to the same effect.

We are of the opinion that the burden of proof with

respect to the medical evidence of disability has been met by Combs. The fact that there may have been an emotional or psychiatric involvement does not change the fact that there were objective findings of physical injury and disability which were contained in the various medical reports offered by Swift. These reports do not contradict, but, to a degree at least, support the findings contained in the report of Dr. Rubert introduced by Combs.

Swift further contends that only Dr. Rubert's report finds any involvement of the lower back and legs. It is urged that Combs originally complained of only an injury to his cervical spine and that all of the treating physicians reported only an injury to that area. We do not agree. Dr. Kernahan's examination on different occasions revealed low back pain, and on May 28, 1968, Dr. Kernahan found spasm of the lumbar paravertebral musculature and had Combs re-admitted to the hospital for treatment of this condition.

Swift relies on *Canhan Sheet Metal Corp. v. Industrial Com., 31 Ill.2d 325; Arbuckle v. Industrial Com., 32 Ill.2d 581;* and *Allis-Chalmers Mfg. Co. v. Industrial Com., 35 Ill.2d 367,* in support of its contention that Combs has not sustained his burden of proving his physical disability by medical testimony. In the cases cited there was no medical evidence to support the employee's claim of physical disability. This is not the situation in the case now before us and we find the cases cited to be inapplicable.

We also do not agree that Combs's credibility was destroyed by impeachment. This case is dissimilar to the line of cases wherein this court has rejected testimony of a claimant which is recognized as obviously false. (*McDonald v. Industrial Com., 39 Ill.2d 396; Rockford Clutch Div., Borg-Warner Corp. v. Industrial Com., 37 Ill.2d 62; United States Steel v. Industrial Com., 8 Ill.2d 407.*) Here Combs testified that he had reported the accident to his supervisor the day of the occurrence. His supervisor testified that Combs did not report to him the day of the occurrence,

but that the next day after learning of the accident from another source, he, the supervisor, called Combs into the office and asked him about his injury. This may contradict Combs's statement but does not establish that he deliberately gave false testimony.

Also, Swift attaches importance to the fact that Combs did not present a fellow employee named "Max" or "Mac", whom he stated was a witness to the accident. The fact that this witness was not called does not lead to the conclusion that Combs was not telling the truth when he stated that "Max" or "Mac" witnessed the occurrence. If, in fact, Combs did make a false statement to this effect or concerning the reporting of the accident to his supervisor this does not require that his entire testimony be rejected. The rule as stated in *McDonald* is that when the claimant testifies falsely to a material issue, the trier of the fact *may* disregard the uncorroborated testimony of such a witness. Apparently the arbitrator and Commission chose not to disregard Combs's testimony. The question of his credibility is not for this court to determine but is for the determination of the Commission. *Cook County v. Industrial Com., 32 Ill.2d 181.*

The supervisor also testified that blood and water could not accumulate on the metal grate on which Combs was standing. Swift contends that this coupled with the fact that the metal grating was serrated as shown by the piece of grating in evidence renders Combs's testimony that he slipped unbelievable. We cannot accept this contention. All of this merely constitutes evidence, and the evaluation thereof and the conclusions to be drawn therefrom were within the peculiar province of the Industrial Commission. *Zeigler v. Industrial Com., 51 Ill.2d 137; Brown v. Industrial Com., 51 Ill.2d 291.*

After considering the evidence, the arbitrator rendered the decision in favor of Combs. On review the case was submitted to the Industrial Commission on the record made on arbitration and the Commission found that the

decision of the arbitrator was correct and affirmed the case. We find nothing in the record of this case to remove it from the general rule which this court has so often announced that it is the primary responsibility of the Industrial Commission to determine questions of fact (*Deere and Co. v. Industrial Com., 47 Ill.2d 144*), to judge the credibility of the witnesses and to draw reasonable inferences from the testimony (*Cebulski v. Industrial Com., 48 Ill.2d 289*), and that the function of a court on review is to determine whether the findings of the Commission are against the manifest weight of the evidence. (*Williams v. Industrial Com., 49 Ill.2d 317.*) The findings of the Industrial Commission were not against the manifest weight of the evidence and the judgment of the circuit court of Ogle County is affirmed.

*Judgment affirmed.*