No. 2--04--0666

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

ANGELA K. FARLOW BEST, ) Appeal from the Circuit Court

) of Lake County.

Petitioner-Appellee, )

)

v. ) No. 04--OP--134

)

STEVEN R. DEVORE BEST, ) Honorable

) Joseph R. Waldeck,

Respondent-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Respondent, Steven R. Devore Best, seeks review of a plenary order of protection entered against him under the Illinois Domestic Violence Act of 1986 (the Act) (750 ILCS 60/101 
et seq.
 (West 2002)).  He contends that the trial court abused its discretion when it granted the order, because it found petitioner, Angela K. Farlow Best, to be an unreliable witness, but nevertheless credited her testimony about an incident of physical abuse by respondent.  The parties dispute whether the decision was one in which the trial court had broad discretion or whether it functioned more as a trier of fact.  They therefore disagree on the proper standard of review.  We determine that the Act requires the trial court to make a finding of abuse by a preponderance of the evidence, and accordingly, our review is on a manifest-weight-of-the-evidence standard.  In employing this standard, we conclude that the trial court acted reasonably when it found that the balance of the evidence favored petitioner.  Although the trial court expressed doubts about petitioner's honesty, it chose to credit her only on points where her testimony was both corroborated and uncontradicted.  We see no error in that approach.  We therefore affirm the judgment of the trial court.

On February 4, 2004, petitioner filed a verified petition for an emergency order of protection against respondent.  In it, petitioner alleged that on February 3, 2004, she and respondent had argued about the terms of their divorce.  In the course of the argument, respondent had grabbed her by the neck and slammed her into a door.  She dialed 9-1-1, and a police search of the house revealed "over 15 handguns and over 10 long guns."  The police also found, under respondent's side of the couple's bed, a loaded gun that had not been present a few days earlier when petitioner cleaned the room, and "a large number of prescription pills, including [O]xycontin and [V]alium, in bottles without labels."

The trial court granted the petition and issued an emergency order, which it extended repeatedly by agreement of the parties.  The trial court never issued an interim order of protection.

On June 3, 2004, the trial court conducted a hearing on a plenary order.  Petitioner testified that, on February 3, 2004, respondent arrived at their home at approximately 8:20 in the evening.  Respondent came into the master bedroom and demanded that petitioner leave the house.  Petitioner testified that they left the master bedroom and went into the hall.  Petitioner testified that respondent grabbed her with one hand around her throat and squeezed.  She felt she could not breathe, and she tried to scream, but could not.  She next testified, "[H]e lifted me up, and all I knew is I was going backwards."

Petitioner further testified that respondent forced her backwards until her back and head hit the door of her daughter Ariel's bedroom.  Petitioner recalled that her head hit first and then bounced several times, and the impact cracked the door and knocked its backing off.  Petitioner then went to the bedroom for her knitting materials and she threw them either at respondent or at the wall.  She then dialed 9-1-1.  Petitioner testified that she felt as though her trachea "had a dent in it" and as though she could not swallow.  When she looked at her throat in the mirror, it was red.  She also noticed her head "had a huge lump on it."  Petitioner testified that respondent was strong and athletic, despite an above-the-knee amputation of his left leg.  She testified that, when the police arrived, they searched the house and found the guns.

On cross-examination, respondent questioned petitioner's veracity.  Petitioner admitted testifying in her deposition that in 1995 she was convicted of a shoplifting offense in Missouri; however, at the hearing she asserted that the disposition did not result in a conviction.  Petitioner also denied that she had stolen drugs from respondent's medical office; however, under further cross-examination, she agreed that, at her deposition, she had admitted that she had taken drugs from the office without permission because she was contemplating suicide.  Petitioner admitted that she was undergoing mental health treatment.  Petitioner also admitted having given a false address for her driver's license to make Ariel eligible for a particular grade school.

Rheanna Hall, a Deerfield police officer, testified that she responded to petitioner's 9-1-1 call.  Hall testified that she interviewed petitioner, respondent, and Ariel at the scene. Hall testified that she observed that petitioner had a reddened oval mark on her neck, approximately the size of a thumb, near the base of her skull.  Hall testified that she and her colleagues found many firearms in the house, including a loaded Beretta with the safety off, under the bed in the master bedroom.  Hall further testified that she took photographs of petitioner and the weapons.

On cross-examination, Hall testified that, in the photograph of petitioner, the mark on her neck was not visible.  Hall gave inconsistent answers when asked whether she could identify the mark as a finger mark, and she did not know whether petitioner had a bump on the back of her head.  Hall testified that petitioner refused medical attention.  Hall further testified that, during her interview with respondent, he told her that he and petitioner had argued over their divorce, that petitioner was mentally unstable and needed psychiatric help, and that she had attacked him with knitting needles.

Following closing arguments, the trial court ordered the issuance of a plenary order of protection, while acknowledging skepticism about some of petitioner's claims and her overall credibility:

"I've considered the evidence *** and there are a lot of issues by which a lot of inferences have been made by the parties in this case which really have no basis in any fact at all.

One which is particularly compelling is this issue about the guns and trying to link them in some manner to Dr. Best when I think the testimony is uncontroverted by the Petitioner's own statements that Dr. Best wasn't even in the house until moments before this alleged incident took place.

To say that it's because he put them there or because he had them there, that's what everyone wants me to think.  Petitioner wants me to think that he's got these guns, he's got them available, they're loaded.  I can't draw that inference.

I do have some question as to the credibility of the Petitioner.  She's been adequately impeached--though not, I don't want to say substantially--by some prior indiscretions on her part.

I think she was a well coached witness.  I noticed that before she answered any question, she thought long and hard about the answer.  Rather than really telling me what the truth was, I think that she was searching for the right answer.

That's telling from a witness.  It just doesn't speak of things that are truthful that are coming out of the mouth of a witness at any time, and it just doesn't bode well.

I guess the bottom line that I come down to, though, is I have to make a decision, and the decision is not one that is beyond a reasonable doubt but by a mere preponderance of the evidence in these cases.

I have to take her testimony which she testified to as corroborated by the witnesses, specifically the police officer, as by a preponderance of evidence as being true, and I'm going to issue the Order of Protection."

Respondent timely appeals, asserting that the evidence of petitioner's dishonesty left her so thoroughly discredited that it was error for the trial court to grant the order of protection based on her testimony.

Initially, the parties' positions reflect uncertainty and disagreement regarding the basic nature of the trial court's decision-making function under the Act.  Respondent asserts that a finding of abuse is discretionary with the trial court.  He further suggests that, to the extent that the trial court believed that his failure to present evidence foreclosed it from finding in his favor, it failed to recognize that it had any discretion to exercise, and so committed error.  Petitioner's argument more tentatively suggests that we are reviewing the trial court's decision in its capacity as trier of fact and that, therefore, this court is deciding whether the evidence supports the trial court's decision.  The parties' positions on the proper standard of review also reflect their disagreement about the trial court's function, with respondent maintaining that the standard is abuse-of-discretion and petitioner maintaining that it is manifest-weight-of-the-evidence.

We believe that the trial court has no special discretion under the Act when it decides whether a respondent has abused a petitioner.  We recognize that most of the relevant cases support respondent's position.  However, we have reviewed those cases and are convinced that they do not provide a persuasive rationale for departing from the language of the Act.  That language in no way suggests that the trial court's function is anything but to interpret the law, find the facts, and apply the law to the facts.  There being no disagreement here about whether respondent's alleged actions fell within the Act's definition of abuse, we determine that the only question for us to decide is whether the trial court's finding of fact was against the manifest weight of the evidence.

By the plain language of the Act, a trial court must use a preponderance-of-the-evidence standard in deciding whether an order of protection should issue:

"Any proceeding to obtain, modify, reopen or appeal an order of protection, whether commenced alone or in conjunction with a civil or criminal proceeding, shall be governed by the rules of civil procedure of this State.  The standard of proof in such a proceeding is proof by a preponderance of the evidence, whether the proceeding is heard in criminal or civil court."  750 ILCS 60/205(a) (West 2002).

Finding whether the respondent has abused the petitioner is the central decision with which the Act charges the trial court:

"If the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act, an order of protection prohibiting the abuse, neglect, or exploitation shall issue; provided that petitioner must also satisfy the requirements [for the specific form of relief the trial court proposes to grant.]"  750 ILCS 60/214(a) (West 2002).

Thus, the Act requires the trial court to decide whether abuse occurred by the preponderance of the evidence.

Nevertheless, most cases on point state that the finding of abuse lies within the discretion of the trial court.  See, 
e.g.
, 
Wilson v. Jackson
, 312 Ill. App. 3d 1156, 1165 (2000).  Those cases ignore the statutory language and sow confusion about the trial court's role.  Our research has shown us that the idea that the trial court has discretion derives from 
In re Marriage of Hagaman
, 123 Ill. App. 3d 549, 553 (1984).  In essence, that case held that the trial court should use its discretion to fill the holes in the statutory definition of "abuse."

The respondent in 
Hagaman
 asserted that the definition of "abuse" in the version of the Act then effective (Ill. Rev. Stat. 1983, ch. 40, par. 2301--1 
et
 
seq
.) was so unclear as to violate his due process rights.  
Hagaman
, 123 Ill. App. 3d at 552-53.  At the time, the Act's definition of abuse was sparse in its detail:

" 'Abuse' means the act of striking, threatening, harassing or interfering with the personal liberty of any family or household member by any other family or household member, but excludes any reasonable discipline of a minor child by a parent or person in loco parentis of such minor child."  Ill. Rev. Stat. 1983, ch. 40, par. 2301--3(1).

We note that the former version of the statute did not further define "harassing" or any other subcategory of abuse.  We also note that, since 
Hagaman
, the General Assembly has amended the definition of abuse to make it far more specific.  Thus, even if the reasoning in 
Hagaman
 were unassailable, the amendment would abrogate the result.  Compare Ill. Rev. Stat. 1983, ch. 40, par. 2301--3(1) with 750 ILCS 60/103(1) (West 2002).  The reviewing court held that the definition of "abuse" satisfied due process requirements for a nonpenal statute:

"While the statutory definition of abuse encompasses a broad range of conduct, we conclude it is not so unclear that courts are unable to determine the legislature's intent.

It is for the trial court, in its broad discretion, to determine on a case-by-case basis whether there has been abuse.  The trial judge must assess the credibility of the witnesses, the acts and statements described, and the tension between household members.  In so doing, the trial judge necessarily considers the potential for further abuse."  
Hagaman
, 123 Ill. App. 3d at 554.

We believe it likely that the 
Hagaman
 court meant nothing more controversial than to suggest that the trial court could rely on its knowledge of human nature to flesh out the meaning of abuse.  However, one could read 
Hagaman
 to imply that a reviewing court should afford the trial court's decision the highest degree of deference:  if a ruling is a matter of judicial discretion, it is reviewable only for an abuse of discretion.  See 
In re D.T.
, 212 Ill. 2d 347, 356 (2004).

Later cases have interpreted 
Hagaman
 in exactly this way.  This court, in 
In re Marriage of Blitstein
, 212 Ill. App. 3d 124, 131 (1991), cited 
Hagaman
 as precedent for holding that it was not an "abuse of discretion" for a trial court to rule that certain of a respondent's actions constituted abuse.  Cases since then have cited 
Hagaman
, 
Blitstein
, and their progeny for the proposition that the trial court exercises its discretion in deciding whether abuse has occurred.  See, 
e.g.
, 
In re Marriage of Lichtenstein
, 263 Ill. App. 3d 266, 269 (1994).  Moreover, reviewing courts have widely cited these cases for the proposition that they review a finding of abuse under the Act for an abuse of discretion.  See 
Wilson
, 312 Ill. App. 3d at 1165 (reviewing this precedent).

Although long, this line of precedent is unconvincing.  We find no decision since 
Hagaman
 that attempts to provide an independent rationale for deeming the trial court to be endowed with discretion.  The cases instead rely purely on the established precedent.  See, 
e.g.
, 
Wilson
, 312 Ill. App. 3d at 1165 (giving the existing precedent as its only rationale).  Given that the result conflicts with basic principles governing the function of the trial court and appellate review, we cannot continue to follow the existing line of precedent.

When a trial court makes a finding of abuse, it is serving both as arbiter of the law and trier of fact.  Ultimately, if it crafts an order of protection, it acts as a shaper of remedies as well.  We would not dispute that, in that capacity, it has true discretion.  The role the trial court was playing when it made the outcome-determinative decision generally sets the proper standard of review.  See 
Franz v. Calaco Development Corp.
, 352 Ill. App. 3d 1129, 1139 (2004)).

As the arbiter of the law, it decides whether the acts of which the petitioner has presented evidence fall within the Act's definition of abuse.  See 
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 279 (2003).  Had that been at issue in this case, we would review the question 
de novo
.  See 
Sherman
, 203 Ill. 2d at 279.  
Hagaman
, by its use of the term "discretion" in describing the trial court's interpretive function, seems to suggest that when a statute leaves much for the interpretive process to resolve, the reviewing court should defer to the trial court's interpretation.  That suggestion is not consistent with the principles of appellate review, which give deference to lower tribunals' interpretations of the law only in rare instances, such as when reviewing determinations by administrative agencies having special expertise in their area of enforcement (
e.g.
, 
Grever v. Board of Trustees of the Illinois Municipal Retirement Fund
, 353 Ill. App. 3d 263, 265 (2004)).

The Act instructs the trial court, as the trier of fact, to decide whether the respondent has abused the petitioner by the preponderance of the evidence.  750 ILCS 60/205(a) (West 2002).  When a trial court makes a finding of fact by the preponderance of the evidence, a reviewing court defers to the trial court, and so decides only whether the finding is against the manifest weight of the evidence.  See, 
e.g.
, 
In re Arthur H.
, 212 Ill. 2d 441, 463-64 (2004).  Manifest-weight-of-the-evidence review is nevertheless less deferential than abuse-of-discretion review, which is generally "reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial" (
In re D.T.
, 212 Ill. 2d at 356), or in fashioning remedies in equity (see 
Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois
, 319 Ill. App. 3d 870, 878 (2001)).  We therefore conclude that manifest-weight-of-the-evidence review is proper here.

We find support for our decision in our supreme court's recent resolution of a similar issue in 
In re D.T.
  A long line of appellate precedent had held that, in proceedings to terminate parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1--1 
et seq.
 (West 2000)) and the Adoption Act (750 ILCS 50/1 
et seq.
 (West 2000)), a juvenile court's decision whether termination is in the best interests of the child is committed to the court's discretion and is therefore reviewed under an abuse-of-discretion standard.  
In re D.T.
, 212 Ill. 2d at 357.  The rationale suggested for this deference was that the difficulty and delicacy of a best-interests decision, taking into account as it must many subtle psychological factors, require that the juvenile court have unusual freedom.  
In re D.T.
, 212 Ill. 2d at 353-54.  The supreme court rejected this argument.  It reasoned that, if a finding of this kind is committed to the juvenile court's discretion, the result is a proceeding in which there is no effective burden of proof, since such a standard would permit the juvenile court to reject all of the evidence submitted by a party without risk of being reversed based on the reviewing court's evaluation of the balance of the evidence.  
In re D.T.
, 212 Ill. 2d at 354-56.  Noting that a decision affecting a significant right is 
not
 the type of ruling to which abuse-of-discretion review traditionally applies, and that the many appellate court decisions applying that standard provided no analysis of, or reason for, the use of the abuse-of-discretion standard, the court rejected its use.  
In re D.T.
, 212 Ill. 2d at 357.

From 
In re D.T.
 we draw two principles.  First, a trial court is not entitled to special deference simply because a law requires it to take into account subtle psychological factors.  Second, deference is improper if it effectively vitiates a necessary burden of proof.  We note in particular that the second principle disposes of respondent's suggestion that the trial court could have set aside its finding regarding the weight of the evidence and used its discretion to deny an order of protection.

Applying a manifest-weight-of-the-evidence standard, we will reverse the trial court's decision only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or without basis in the evidence presented.  
In re D.F.
, 201 Ill. 2d 476, 498 (2002).  We defer to the trial court as the finder of fact because it has observed the demeanor of the parties and the witnesses and because it has gained a familiarity with the evidence that a reviewing court can never have.  
In re D.F.
, 201 Ill. 2d at 498-99.  Therefore, we will not substitute our judgment for the trial court's regarding the credibility of the witnesses, the weight it should have given to the evidence, or the inferences it should have drawn.  
In re D.F.
, 201 Ill. 2d at 499.

It is 
not
 clearly apparent that respondent did not abuse petitioner, nor is the finding of abuse without basis in the evidence.  Respondent asserts that the application of the maxim "
falsus
 
in
 
uno
, 
falsus
 
in
 
omnibus
" (false in one thing, false in all things) required the trial court, when it concluded that petitioner was dishonest about the firearms and other things, to also conclude that she was lying about the physical abuse.  That is not the rule.  The principle for which "
falsus
 
in
 
uno
, 
falsus
 
in
 
omnibus
" stands is that, when a witness testifies falsely as to one material point, the trier of the fact 
may
 disregard the 
uncorroborated
 testimony of that witness regarding other points.  
Swift & Co. v. Industrial Comm'n
, 52 Ill. 2d 490, 494-95 (1972).  However, the principle does not 
require
 the trier of fact
 to disregard the testimony.  
Swift
, 52 Ill. 2d at 494-95.  Furthermore, the principle applies only to 
uncorroborated
 testimony.  
Swift
, 52 Ill. 2d at 494-95.  The trial court was free to use its observation of petitioner's testimony to decide whether some of it was worthy of belief.  That it did so only as to the portions that the police officer's evidence partially corroborated shows that it was taking a cautious approach.  That approach was eminently reasonable.

Respondent argues that the rule of 
Tepper v. Campo
, 398 Ill. 496, 504-06 (1947), supports a reversal.  We disagree.  The court in 
Tepper
 merely stated that the law did not require a trial court to believe the uncontradicted, but implausible, testimony of an interested witness.  Like the maxim "
falsus
 
in
 
uno
, 
falsus
 
in
 
omnibus
," 
Tepper
 merely suggested that a finding for respondent might have been sustainable, without supporting the proposition that such a finding was mandatory.

For the reasons given, we affirm the circuit court of Lake County's grant of an order of protection.

Affirmed.

McLAREN and GROMETER, JJ., concur.