2020 IL App (1st) 191484-U

No. 1-19-1484

Order filed February 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| DIANA G. POLK, | ) | Appeal from the Circuit |
|     Petitioner/Counter-Respondent-Appellee, | ) | Court of Cook County |
| | ) | |
| v. | ) | No. 15 D 10934 |
| | ) | |
| LEE T. POLK, | ) | |
| | ) | The Honorable John T. |
|     Respondent/Counter-Petitioner-Appellant. | ) | Carr, Judge Presiding |
| | ) | |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Griffin and Justice Walker concurred in the judgment.

## ORDER

¶ 1    *Held:* Directed finding on parenting responsibilities at the beginning of the dissolution of marriage trial is final and appealable; the parenting responsibilities allocation judgment was not against the manifest weight of the evidence.

¶ 2    This is an appeal from the entry of an order allocating parenting time in a marriage dissolution proceeding. As discussed below, the parties disagree as to whether the order was final and appealable under Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). At trial, appellant, Lee Polk, offered evidence in his favor on the issue of parenting time. After Lee rested, appellee, Diana Polk, orally moved for a directed finding. The circuit court denied the motion and Diana proceeded to introduce evidence on this issue, beginning with an adverse examination of Lee. After

1

Diana elicited testimony from Lee, the circuit court spoke off the record with the attorneys in chambers. Upon their return, the circuit court *sua sponte* reconsidered Diana's oral motion for a directed finding. The circuit court heard argument from counsel and heard from the guardian *ad litem* (GAL). The circuit court granted Diana's motion for a directed finding and orally stated the terms of his final parenting time order. The circuit court also stated that it would take no further evidence on the issue of parenting time. The court then directed the parties to prepare a written order that conformed to its oral ruling. The circuit court stated that the oral order was to be considered a temporary parenting time order and would not be made final until it was incorporated in the final judgment at the close of the marital dissolution proceedings.

¶ 3       Lee filed this appeal pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). Diana moved to dismiss the appeal for lack of jurisdiction. For the following reasons, we deny Diana's motion to dismiss and affirm the judgment of the circuit court.

¶ 4                                        I. BACKGROUND

¶ 5       Lee and Diana were married on August 6, 2005. Their marriage resulted in one child, D.P., who was 13 years old at trial. Diana filed her petition for dissolution of marriage on December 4, 2015. In an agreed order dated July 19, 2016, a GAL for D.P. was appointed and a temporary parenting time schedule was entered. On July 26, the GAL filed his recommendations and the trial court entered a temporary parenting order, which was to remain in effect until a hearing that was set for January 13, 2017. This hearing was continued pending mediation of the issue of parental responsibilities. Mediation proved unsuccessful, and Lee filed his counter-petition for dissolution of marriage on October 11, 2017.

¶ 6       On November 15, 2018, Diana voluntarily dismissed her petition for dissolution of marriage. On December 10, 2018, Lee filed a motion to modify the temporary parenting time

2

schedule. After a hearing, the trial court modified the temporary parenting time order on January 15, 2019, giving Lee parenting time on Tuesday evenings until 7:30 p.m., Thursdays overnight, and every other weekend from Friday (beginning after school or at 9:00 a.m. if no school) through Sunday at 5:00 p.m. This temporary order was entered "without prejudice to final determination at trial."

¶ 7    Trial on Lee's dissolution petition began on May 15, 2019, with evidence on the issue of parental responsibilities.[1] In Lee's case he presented a clinical psychologist, Dr. Finn, who conducted an evaluation of D.P. pursuant to section 604.10(b) of the Marriage Act (750 ILCS 5/604.10(b) (West 2018)). Lee testified and Diana testified as an adverse witness.

¶ 8    After Lee rested on the issue of parenting time, Diana made an oral motion for a directed finding on the issue of allocation of parenting time. The trial court heard argument from the parties and also asked the GAL for his position on the motion. The GAL replied that the court had heard the parties' positions and the court knew what those positions were. After further argument from Lee and Diana, the trial court denied the motion for a directed finding. Counsel for Diana then stated that he was "going to put a case on," and called Lee as an adverse witness. After extensive questioning of Lee, the trial court interrupted and engaged the parties in a discussion off the record.

¶ 9    Back on the record, the trial court stated that it was going to "revisit the motion for a directed finding." The court heard argument from both parties and heard comments from the GAL. Although the GAL had not been called as a witness by either party, over Diana's objection, the

---

[1]The Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.*) (West 2018) defines "parental responsibilities" as "both parenting time and significant decision-making responsibilities with respect to a child" and "parenting time" as "the time during which a parent is responsible for exercising caretaking functions and non-significant decision-making responsibilities with respect to the child." *Id.* § 600(d), (e). For the purposes of this appeal, parenting time was the only issue before the court during the dissolution of marriage trial.

GAL discussed his opinion on the best interests of D.P.

¶ 10    The trial court then issued its oral ruling on Diana's motion for a directed finding. The court stated that it had to consider the best interests of the child and that a consistent schedule would be in the best interests of D.P. Specifically, the court stated that "the parenting schedule that's in effect I'm hearing from the GAL that it's a working schedule." The court stated that an equal split of parenting time was not called for, finding that "a sufficient case has been put on" to keep the same parenting time schedule in effect, with the modification that Lee would parent D.P. overnight on Sundays during the summer. The court granted the motion for a directed finding and directed that a written order be prepared to conform to its oral ruling. The court further noted that, although the case was not bifurcated, the court had ordered that evidence on each of the separate issues in the case (i.e., the validity of the prenuptial agreement, the parties' finances, and allocation of parenting time and responsibilities) would be heard separately. The court then made the following statements about the order's finality:

"MR. YAVITZ [(COUNSEL FOR DIANA)]: So all we have to do is present you an order that said modifies the last parenting order that says starting with summer school recess while summer is out he gets Sunday nights overnight?

THE COURT: That's all I'm doing basically. I am ruling that I am finding that it's in the best interest of the minor child that the parenting agreement stay the same except for the modification during the summer, the Sunday nights during the summer.

MR. BENDER [(COUNSEL FOR LEE)]: Judge, if I could just–

THE COURT: Over everybody's objections.

MR. BENDER: I'm just trying to get this clear. This is the final judgment about trial and as far as allocation.

4

THE COURT: Correct. There's no more evidence that's going to be presented.

MR. BENDER: I'm only asking because I don't know if I need to ask for 304(a) language or not.

THE COURT: No, you're not going to get 304(a) language. I don't give it. The judgment is not final.

MR. BENDER: It's not final. I'm confused. Is it or is it not?

MR. YAVITZ: I understood that you're entering or modifying the temporary parenting schedule.

THE COURT: All I'm doing is modifying the temporary parenting schedule, and I am saying down the road when you present your final judgment for dissolution of marriage and parenting schedule that it's going to be the same as it is in the parenting, so it's still modifying the order until the judgment is entered.

\* \* \*

THE COURT: I am not entering a final order. I'm granting the motion for a directed finding. It's not an order yet. Directed finding is– I believe it's in the best interest of the minor child to continue the present parenting schedule except for the Sunday nights."

¶ 11    The court again denied Lee's motion for leave to appeal under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 12    On June 20, 2019, the trial court entered a written order that conformed to its oral ruling on June 19. The written order stated that although the court initially denied Diana's motion for a directed finding, the court "*sua sponte* reversed its earlier denial" and granted the motion after Diana began presenting her case-in-chief. The order also stated that Diana's motion for a directed finding was granted, and that the parenting schedule laid out in the order "shall remain in full force

5

and effect" and "shall be incorporated in the final Allocation Judgment of Parental Responsibilities and Allocation of Parenting Time contemporaneously with the entry of a final Judgment of Dissolution of Marriage." Finally, the written order stated that the court "finds this order is to be considered a temporary and not a final order. [Lee]'s oral motion for Rule 304 language is denied."

¶ 13 Lee filed his notice of appeal on July 19, 2019, pursuant to Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). The record on appeal was filed on September 4, 2019. However, the record did not contain the trial court's June 20, 2019, order from which Lee appealed. On October 15, 2019, Diana filed a motion to dismiss the appeal for lack of jurisdiction. This court ordered that the motion be taken with the case. On October 16, 2019, Lee filed a motion to supplement the record *instanter* to include the June 20, 2019, written order. We allowed the motion.

¶ 14                                    II. ANALYSIS

¶ 15 We first address Diana's motion to dismiss the appeal. Diana sets forth two arguments as to why this court lacks jurisdiction. First, Diana contends that we lack appellate jurisdiction because Lee failed to include the June 20, 2019, parenting order in the record on appeal. Although Diana acknowledges that Lee filed a motion to supplement the record on appeal *instanter*, Diana argues that this appeal should still be dismissed because the motion to supplement the record did not comply with Local Rule 19 (Ill. App. Ct., First Dist., R. 19 (Sept. 1, 2004)).

¶ 16 We disagree. Rule 19 defines a supplemental record as any record prepared subsequent to the bound and certified record that was filed in this court. *Id.* Supplemental records must be bound and certified. *Id.* Once bound and certified, a motion must be filed in [this court] seeking leave to file the supplemental record *instanter*. *Id.* "The bound and certified supplemental record must be submitted with the motion." *Id.* Presentation of a stipulation and the bound and certified

6

supplemental record must be accompanied by a motion for leave to file the supplemental record *instanter* to satisfy the requirements of Rule 19. *Id.*

¶ 17    Our review of the record shows that Lee complied with Rule 19. On October 16, 2019, Lee filed a motion to supplement the record *instanter* and included a stipulation from the parties agreeing to include the June 20, 2019, order in the record on appeal. The bound and certified supplement to the record was also presented at the time Lee's motion was filed. We granted the motion on October 23, 2019, and the supplement to the record was filed that same day. Because the June 20, 2019, order was properly supplemented to the record on appeal, Diana's motion to dismiss for failure to include the June 20, 2019, order is denied.

¶ 18    Second, Diana argues that this appeal must be dismissed for lack of jurisdiction because the June 20, 2019, order was not a final and appealable order under Rule 304(b)(6). Lee contends that although the trial court stated that the order was "temporary," the order should be considered final because the trial court also stated that no further evidence on parenting time would be taken and that the June 20, 2019, order would be incorporated into the final judgment for dissolution of marriage.

¶ 19    Rule 304(b)(6) provides for the immediate appeal of any "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.*) or Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq.*)." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016). Such orders are appealable without a special finding even when they are "entered prior to the resolution of other matters involved in the dissolution proceeding such as property distribution and support ***." Ill. S. Ct. R. 304, Committee Comments (rev. Feb. 26, 2010). As the committee comments explain, Rule 304(b)(6) uses "both the terms 'custody' and 'allocation of parental responsibilities' in

7

recognition that some legislative enactments covered by the rules utilize the term 'custody' while the Illinois Marriage and Dissolution of Marriage Act and the Illinois Parentage Act of 2015 utilize the term 'allocation of parental responsibilities.'" *Id.* An allocation of parental responsibilities judgment under Rule 304(b)(6) refers to "the trial court's permanent determination of custody entered incident to the dissolution of marriage, as distinguished from any temporary or interim orders of custody entered pursuant to section 603 of the Act (750 ILCS 5/603)." *Id.* Thus, for the June 20, 2019 order to be considered final and appealable under Rule 304(b)(6), it must be a permanent allocation of parental responsibilities judgment within the meaning of the Marriage Act.

¶ 20 Because a child custody order "is temporary or final according to its substance and not its form" (*Levy v. Skilling*, 136 Ill. App. 3d 727, 729 (1985)), we look to the contents of the order in context with the circumstances in which it was ordered.

¶ 21 Lee cites to *In re Marriage of Harris*, 2015 IL App (2d) 140616 to support his argument that the substance of the order should control whether this order is considered final or temporary. In *Harris*, the circuit court held a trial in a dissolution and custody proceeding and on November 20, 2013, entered "an oral ruling as to most matters and asked counsel for [the father] to 'prepare an order, judgment, to conform with [its] ruling.'" *Id.* ¶ 4. The trial court ruled on custody allocation and "most of the financial issues, but postponed ruling on the division of guardian ad litem fees." *Id.* The trial court also "asked the parties to work out certain details of changing residences and visitation but ordered that the transition of custody start immediately." *Id.* A written order to this effect was entered on November 25, 2013. *Id.* ¶ 5. On December 9, 2013, before the entry of the judgment for dissolution of marriage, the mother filed a written motion for reconsideration. *Id.* ¶¶ 6-7. The trial court denied the motion because the previous November 25, 2013, order was "temporary," and because the motion was not properly filed after the court entered

the dissolution judgment. *Id.* ¶ 9. We reversed, finding that the November 25, 2013 order was final under Rule 304(b)(6) and therefore the motion to reconsider was proper. *Id.* ¶ 17. We found that trial court's characterization of the custody order as "temporary" was "inaccurate as to the substance of the custody determination" and that because the trial court "specifically provided that the same custody determination was to appear in the dissolution judgment, *** the court intended that there be no difference in substance between the November 25 custody determination and that in the dissolution judgment." *Id.*

¶ 22    We find that the June 20, 2019, order is final and appealable under Rule 304(b)(6) because it was intended as a permanent allocation of parenting time judgment under the Marriage Act. The parties were aware that the May 15, 2019, dissolution trial began with evidence on the issue of the final determination of parenting responsibilities. This is apparent when we consider that Lee and Diana limited their opening statements to the "non-financial issues" of parenting time and decision-making. Further, when the trial court entered its findings on the allocation of parenting time, it specifically stated that it was doing so under the best interests of the child standard and with consideration of the factors set forth in section 602.7 of the Marriage Act (750 ILCS 5/602.7 (West 2018)) for a permanent allocation of parenting time. Like the trial court in *Harris*, the trial court here stated that the order was "temporary," but also provided that "down the road when you present your final judgment for dissolution of marriage and parenting schedule it's going to be the same," meaning the oral articulation of its order would be incorporated into the final judgment for dissolution of marriage. Additionally, the trial court stated that no further evidence would be taken on the issue of parental responsibilities because "the only thing that can be accomplished by further testimony is more acrimony," and the substance of the order reflected the court's findings after a trial on the merits of the custody issue. The June 20, 2019, order was final because the trial court

9

stated that there would be no substantive difference between the June 20, 2019, order and the parental allocation judgment to be filed incident to the judgment of dissolution of marriage. Thus, considering the substance of the trial court's ruling, we find that the June 20, 2019, order was a final and appealable allocation judgment of parenting responsibilities under Rule 304(b)(6).

¶ 23    Diana also argues that the June 20, 2019, order cannot be considered a permanent allocation of parental responsibilities judgment under Rule 304(b)(6) because the order only discussed parenting time and did not include an allocation of other parental responsibilities. We disagree. The plain text of the written order states that "until entry of the final" order, "both parents shall share joint decision-making and joint parental responsibilities." Our reading of the record leads us to conclude that the circuit court, in its resolution of the issue of parental responsibilities, had heard all that that the parties would offer during Lee's case. Because Diana's evidence on the issue would be a rehash of Lee's testimony and her adverse testimony given in Lee's case, and because the GAL reported that the in place parenting schedule, with a slight modification, was in the best interest of D.P., the final allocation of parental responsibilities judgment contained in the final dissolution judgement would be consistent with the circuit court's oral pronouncement memorialized in the June 20, 2019, order. Additionally, the parties were to continue the trial with the financial evidence at a later date, which is a further indication that only parenting time was finally resolved during this phase of the trial.

¶ 24    Having determined that we have appellate jurisdiction over the June 20, 2019, parenting order, we turn to the merits of Lee's appeal. Lee first argues that the trial court erred in entering a directed finding in favor of Diana because Diana waived the motion once she began presenting evidence.

¶ 25　A defendant may make a motion for a directed finding in a non-jury case at the close of the plaintiff's evidence. 735 ILCS 5/2-110 (West 2018). "If the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived." *Id.* Generally, then, a defendant waives its claim that denial of a motion for a directed finding was error when it proceeds to present evidence. *Pancoe v. Singh*, 376 Ill. App. 3d 900, 909 (2007).

¶ 26　However, the trial court has the inherent authority to correct its previous rulings. *Geske v. Geske*, 343 Ill. App. 3d 881, 885 (2003) (citing *People v. Van Cleve*, 89 Ill. 2d 298 (1982)). Where a trial court acknowledges it applied an incorrect standard to its original ruling, the trial judge has "the inherent authority to reopen the motion for a directed finding and rule on it accordingly." *Id.*

¶ 27　We find that the trial court did not err in revisiting Diana's motion for a directed finding. The trial court's inherent power to correct its previous rulings was not limited by Diana's decision to present evidence after the trial court initially denied her motion. The trial court explained that it was reconsidering its previous determination, stating

>　"In this particular case I see enough of the facts that were presented to me that kind of direct me towards this finding. I apologize. I should have done it when the motion was originally done. I think, you know, rather than sit here another couple of days and listen to, kind of, a blood-lining [*sic*] exercise—I heard the evidence. I heard it, okay? I apologize for not acting on it to begin with. I believe that a sufficient case has been put on to the [*sic*] keep the visitation the way it is with the exception of during the summer the father gets more parenting time. *** So I'm going to grant your motion for a directed finding."

We find that the trial court acted within its discretion to invoke its inherent power to review its previous ruling on Diana's motion for a directed finding.

11

¶ 28 Because we find the trial court was within its discretion to reconsider and reverse its earlier denial of a directed finding in Diana's favor, Lee argues that the directed finding was in error because it failed to properly evaluate his case under the Marriage Act. Lee states that the trial court incorrectly required him to meet the evidentiary burden for modification of a final custody order found in section 610.5 (750 ILCS 5/610.5 (West 2018)), instead of considering the case under the *de novo* initial allocation standard required by section 602.7 (*id.* § 602.7). We review *de novo* the trial court's application of the law to the facts presented. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002).

¶ 29 Final allocation of parental time is governed by section 602.7 of the Marriage Act (750 ILCS 5/602.7 (West 2018)). The trial court allocates parenting time according to the best interests of the child. *Id.* § 602.7(a) In a hearing on the final allocation of custody, the trial court must determine the best interests of the child based on all relevant factors, including the wishes of the child, the wishes of the child's parents, the child's adjustment to his community, the mental and physical health of all those involved, and the willingness of each parent to foster the child's relationship with the other parent. *Id.* § 602.7(b).

¶ 30 "A court may order a temporary allocation of parental responsibilities [decision-making and parenting time] in the child's best interests before the entry of a final allocation judgment." *Id.* § 603.5. Temporary custody orders are entered pursuant to section 603.5. *Id.* A temporary custody order is provisional in nature and continues only during the pendency of the action. *In re Marriage of Fields*, 283 Ill. App. 3d 894, 901 (1996). "When the matter that is the subject of the temporary order comes before the court for a hearing on the merits, the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order." *Id.* At trial, the court "must conduct a hearing regarding permanent custody or visitation *de novo*." *Id.* at 902. "[A] permanent

12

award is not a modification merely because the permanent custodian differs from the temporary custodian." *In re Marriage of Kennedy*, 94 Ill. App. 3d 537, 544 (1981).

¶ 31    Modifications of final custody orders are governed by section 610.5 (750 ILCS 5/610.5 (West 2018)). At a modification hearing, the party seeking modification carries the burden to present clear and convincing evidence of a change in circumstances that requires modification of the custody arrangement. *Id.*

¶ 32    We find that the trial court applied the correct standard in evaluating the issue of parenting time. The circuit court commenced trial on Lee's dissolution petition and began by taking testimony on the issue of parenting time. We have no doubt the court considered the evidence on this question consistent with the best interests of the child and in conformity with the relevant factors set forth in section 602.7. Contrary to Lee's contention, the trial court did not improperly place a burden on Lee to show that the temporary custody order should be modified. As discussed above, the parties understood that they were proceeding to trial on Lee's dissolution petition to determine, in part, the allocation of parenting time. In its ruling, the trial court stated that it was considering the evidence presented to allocate parenting time under the standard set forth in section 602.7. After commenting that both Lee and Diana had negative comments about the other, the court explained its approach, stating

> "This is not something where I keep score and give points to each person and then come up with whoever has the most points, you know, gets the prize. This is a situation where I have to deal with what I consider it's not Mr. Polk's situation, not the wife's situation. I have to deal with the best interest of the child."

As the trial court stated, it did not determine whether Lee had presented sufficient evidence to meet an evidentiary burden. Rather, the trial court considered all the evidence, and neither party

indicated that more evidence was needed or available, in view of the best interests of D.P. in awarding the final allocation of parenting time.

¶ 33 Although the court referenced the existing temporary custody order in discussing its final order on parenting time, this reference was not in the context of a section 610.5 modification proceeding; rather, it was in the context of rendering a final allocation of parenting responsibilities judgment of which parenting time was a component part. The trial court noted the success of the existing parenting time order as one of many factors relevant to its final allocation of parenting time under section 602.7. Under section 602.7(b)(4), the trial court correctly considered "any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child" in making its final allocation of parenting time. 750 ILCS 5/602.7(b)(4) (West 2018). Therefore, the trial court's discussion of the existing, temporary schedule served as an explanation and template of its decision and those comments do not transform this part of the dissolution trial into a hearing for the modification of the temporary parenting order.

¶ 34 Lee next argues that the court erred in entering a directed finding in favor of Diana because the trial court improperly considered evidence from the GAL.

¶ 35 A motion for a directed finding may be made at the close of the plaintiff's case in all cases tried without a jury. 735 ILCS 5/2–1110 (West 2018). The trial court performs a two-prong analysis in ruling on a motion for a directed finding. *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 170 (2009). "First, the court must determine whether, as a matter of law, the plaintiff has presented a *prima facie* case, by presenting at least some evidence on every element essential to [the plaintiff's underlying] cause of action." (Internal quotation marks omitted.) *Id.* (citing *People ex rel. Sherman v. Cryns,* 203 Ill. 2d 264, 275 (2003)). If the trial court determines that the plaintiff has presented a *prima facie* case, the trial court proceeds to weigh the totality of the

14

evidence presented. *Id.* "Where, as here, the trial court states that it has considered the evidence, the trial court has engaged in the second step of its analysis and has necessarily found the plaintiff has met the first step of the analysis by presenting a *prima facie* case." *Id.*

¶ 36 We review the trial court's entry of a directed finding to determine whether it is against the manifest weight of the evidence. *Id.* "A ruling is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or without basis in the evidence presented." (Internal quotation marks omitted). *Id.* at 170-171 (citing *Best v. Best*, 358 Ill. App. 3d 1046, 1054 (2005)).

¶ 37 We reject Lee's argument that the trial court considered the GAL's statements as evidence. At trial, the court overruled Lee's objection to the GAL speaking, stating that the court was "hearing argument from [the GAL] as the guardian *ad litem*. This is not evidence." Despite the trial court's clear statement regarding the GAL giving an "argument," Lee argues that the trial court nevertheless relied on the GAL's statements as evidence of D.P.'s opinion on the existing parenting schedule when issuing its order. In support of this argument, Lee cites to the trial court's statement that "the parenting schedule that's in effect I'm hearing from the GAL that it's a working schedule." In context, our review of the record shows that the trial court considered the GAL's statements as his view about how the current schedule was operating and, logically, whether it should continue, be modified, or rejected. The record does not show that the trial court relied on the GAL's statements as evidence of D.P.'s opinion because the trial court did not make a finding regarding D.P.'s parenting time preferences. Further, evidence regarding D.P.'s preference for the schedule in effect at the time of the dissolution trial came during Lee's case when Diana testified that she thought the family was "all well-adjusted to the current schedule and the current schedule

15

is stable." In short, our review of the entire trial transcript does not support Lee's argument that the trial court improperly relied on the GAL's statements as evidence.

¶ 38 Finally, we consider Lee's argument that the directed finding in Diana's favor was against the manifest weight of the evidence. Lee argues that because the trial court was limited to considering only the evidence he put forth in his case-in-chief, the manifest weight of the evidence only supported his position. We disagree.

¶ 39 At trial, evidence consisted of Lee's testimony, Diana's adverse examination, and testimony from Dr. Finn. Lee introduced evidence on the section 602.7 factors that demonstrated the benefits of the current parenting time schedule. As to the wishes of each parent, Diana testified that she wanted the permanent parenting schedule to be the same as the temporary schedule for purposes of consistency and stability. As to the wishes of the child, Dr. Finn testified that D.P. preferred the schedule where Lee had parenting time 3 out of every 14 nights, and Diana testified that D.P. was well-adjusted to the current, temporary schedule. As to the child's adjustment to the home and school community, Dr. Finn and Diana testified that the child was doing well.

¶ 40 The trial court found that the evidence supported Lee having parenting time on Tuesday evenings until 7:30 p.m., Thursdays overnight, and every other weekend from Friday through Sunday at 5:00 p.m. during the school year, or through Sunday night during the summer recess. This ruling reflected an increase of one night in Lee's total parenting time as compared to the temporary schedule that was then in place prior to the dissolution trial. In making its ruling, the trial court discussed its preference for a consistent schedule and its concerns about requiring D.P. to readjust to a dramatically different schedule. As discussed, the trial court also considered the efficacy of the temporary parenting schedule and found that it was beneficial. These bases for the trial court's ruling were based on all the evidence introduced at trial, including Lee's testimony.

16

¶ 41　Lee argues that the negative evidence he introduced regarding Diana's parenting as related to the section 602.7 factors required the trial court to find in his favor. There is no requirement that the court accept any evidence and the fact that the result is not consistent with a party's expectation is not a basis for this court to reverse the trial court. The court specifically observed that "[T]here's been, you know, allegations that the mother basically is alienating the child, all right? *** However, I'm not seeing this with this child." On a motion for a directed finding, the trial court must consider the weight and quality of the evidence and make credibility determinations. 735 ILCS 5/2-1110 (West 2018). Therefore, the trial court clearly considered the negative evidence offered by Lee and it was within its discretion to discount or ignore this evidence.

¶ 42　For example, as to the willingness of each parent to foster the child's relationship with the other parent, the trial court found that Lee had established that Diana's behavior would ordinarily lead to alienation between Lee and D.P. However, the trial court found that the evidence that D.P. was well-adjusted outweighed the potential for alienation. As to the parents' mental and physical health, Lee offered Dr. Finn's opinion that Diana had self-reported symptoms consistent with a mood disorder or possible mental health concerns. However, the evidence also shows that Diana took anti-depressants to treat this concern. Additionally, Lee testified that he wanted an equal split of parenting time and Dr. Finn testified that he believed D.P. should spend more time with Lee. However, the evidence shows that both Diana and D.P. favored limiting Lee's parenting time. The trial court properly weighed the conflicting evidence. The trial court's parental responsibilities judgment is not unreasonable or arbitrary simply because it did not align with Lee's position.

¶ 43　Because Lee introduced evidence regarding the benefits of a schedule that was essentially the same as what was provided for in the temporary schedule, as well as evidence in support of an increase in his parenting time, it was not against the manifest weight of the evidence for the trial

17

court to allocate parenting time in line with the parenting time reflected in the temporary schedule with an increase of one additional night of parenting time for Lee. Furthermore, the trial court did not err in finding that the evidence in favor of the current schedule outweighed the evidence regarding Diana's negative behavior. The trial court's order was not arbitrary or unreasonable. We therefore affirm the judgment of the trial court.

¶ 44                                    III. CONCLUSION

¶ 45    For the foregoing reasons, Diana's motion to dismiss the appeal is denied and the judgment of the circuit court is affirmed.

¶ 46    Affirmed.